## P. J. Gleason, Justice of the Peace, v. Weber.

(Decided October 22, 1913).

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Ordinances—Validity—Authority of Municipal District.—By act, approved February 1, 1888, the District of Clifton was created and empowered to enact by-laws and ordinances necessary to the improvement, regulation, well being and advancement of said district, not inconsistent with the federal and state constitutions and laws. The powers thus granted authorizes the passage by the district of an ordinance establishing a building code regulating the erection, repair, alteration and addition to buildings and other structures as places of habitation and for protection against fire, and the appointment of a building inspector to enforce the regulations therein provided.

2. Constitutional Law—Police Power.—Whatever is contrary to public policy or inimical to the public interest is subject to the police power of the State, and the bona fide exercise of such power by the Legislature, for the protection of the public is beyond the reach of judicial inquiry.

3. Municipal Corporations—Districts.—A district created by legislative act before the adoption of the present constitution and empowered to enact by-laws and ordinances for the government of

its inhabitants is not a "town or city" within the meaning of the Constitution, but is a municipality and its legal autonomy has not been changed by the constitution.

4. Municipal Corporations—Ordinances—Criminal Prosecutions.— Where a municipality has power to pass an ordinance, the penalties imposed for violations of its provisions may be enforced.

5. Courts—Inferior Courts—Statutes—Constitutional Provisions— Cities and Towns.—The provisions of the constitution vesting the judicial power in designated courts and authorizing the establishment of a police court in each "city and town" and declaring that all laws inconsistent with it shall cease on its adoption, repeals so much of the charter of the District of Clifton as provides for a police court thereof.

6. Municipal Corporations—Ordinances—Criminal Prosecutions— Courts—Jurisdiction.—Prosecutions for violations of ordinances of the District of Clifton being penal cases and justices of the peace having, exclusive of circuit courts, jurisdiction of all penal cases where the punishment is limited to a fine not exceeding twenty dollars, any justice of the peace of the county wherein the district of Clifton is located has jurisdiction of offenses against the ordinances of the dstrict.

HUBBARD SCHWARTZ for appellant.

OTTO WOLFF for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

By an act of the General Assembly, approved February 1, 1888 (Session Acts 1887-8), the district of Clifton, in Campbell County, was incorporated and given certain powers of self government, vested in a board of trustees and their successors in office. Among these powers are the following: "Said trustees appointed under the provisions of this act, and their successors in office, shall have power to enact all by-laws and ordinances necessary to the improvement, regulation, well being and advancement of the interests of said district, provided, the same be not inconsistent with the Constitution or laws of the United States or of this State." Pursuant to the authority claimed under the above provisions of the act in question, the board of trustees of the district of Clifton, by appropriate proceedings, passed an ordinance establishing a building code regulating the erection, repair, alteration, and addition to buildings and other structures in the district as to their safety and sanitation as places of habitation, and for protection against fire. The ordinance also provided

for the appointment of a building inspector of the district and defined his duties.

The appellee, Christian Weber, after obtaining a permit from the board of trustees of Clifton, proceeded to erect a dwelling house in the district and, in so doing, seems to have violated some one or more of the regulations of the ordinance in question, because of which he was, on the information of the building inspector, arrested under a warrant, charging him with the offense, issued by the appellant, P. J. Gleason, a duly elected, qualified and acting justice of the peace in the first magisterial district of Campbell County, in which is situated the district of Clifton. Appearing before appellant, appellee attacked the validity of the ordinance and denied the jurisdiction of appellant as a justice of the peace to try him for the offense charged in the warrant, but the trial was had and resulted in his conviction; the punishment inflicted being a fine of ten dollars and the costs of prosecution. As appellee persisted in his violation of the regulations of the ordinance, another warrant was issued by appellant as justice of the peace against him for the second offense, but, before he could be arrested or tried thereunder, appellee filed his petition in the Campbell Circuit Court for a writ of prohibition, the grounds alleged for the writ being that the ordinance, for violating the provisions of which appellee had been tried and convicted under the first warrant and was about to be tried under the second, was invalid because of the absence of power in the board of trustees to pass the ordinance; and, furthermore, that appellant, as justice of the peace, was without jurisdiction to try him. The appellant filed a demurrer to the petition and, at the same time, an answer, which traversed the averments of the petition. Following the submission of the case upon the demurrer, answer and a copy of the ordinance, which was filed and made a part of the answer, the circuit court granted the writ of prohibition which prevented the collection of the fine and costs imposed against appellee under the first warrant and prevented appellant, as justice of the peace, from proceeding with the trial of appellee for the offense charged in the second warrant. This appeal is prosecuted from the judgment manifesting these rulings.

Two questions are presented for decision by the appeal: First, had the board of trustees of the district of Clifton power to adopt the building code ordinance and

impose penalties for violations of its provisions; and second, had appellant, as justice of the peace, jurisdiction to try an infraction of the ordinance?

The first question is not, in our opinion, difficult of solution. It will be observed that the ordinance is designed to advance the well being of the municipality, its object being to require buildings and other structures to be erected in such a way as will contribute to the public safety and protect the public health. To this end the ordinance provides for an official inspection, by an inspector, of all buildings that are erected, which is of itself a guaranty of efficient construction and maintenance. The general powers conferred by the ordinance are such as are usually exercised under the police power by municipalities, and we discover nothing in its provisions that can be regarded as unreasonable, discriminatory, or oppressive; nor are any of its provisions inconsistent with the Constitution or laws of the United States or of this State. As well stated in State v. Clark, 54 Mo., 17, "It is naked assumption to say that any matter allowed by the Legislature is against public policy. The best indications of public policy are to be found in the enactments of the Legislature. To say that such a law is of unusual tendency is disrespectful to the Legislature, who, no doubt, designed to promote the morals and health of the citizens. Whether the ordinance in question is calculated to promote the object is a question with which the courts have no concern when the legislative will has been plainly expressed."

In L. & N. R. R. Co. v. Kentucky, 101 U. S., 667, we find this statement of the law on the subject under consideration: "Whatever is contrary to public policy or inimical to the public interest is subject to the police power of the State and within legislative control, and in the exercise of such power the Legislature is vested with a large discretion, which, if exercised bona fide for the protection of the public, is beyond the reach of judicial inquiry."

In Silva v. City of Newport, 150 Ky., 781, in considering the power of the city council to pass an ordinance in pursuance of certain provisions of the city charter, practically the same as those of the act under which the board of trustees of the district of Clifton passed the ordinance here involved, we said: "It is a well recognized rule of law that, where the municipal Legislature has the power to act, it must be governed, not by

the discretion of the courts, but by its own discretion, for which reason the courts should not be hasty in convicting it of being unreasonable in the exercise of it. In the same case, in answer to the objection that the charter of the city of Newport was not sufficiently specific in its enumeration of the powers attempted to be conferred, we further said: "If sub-section 25 of section 3058, Kentucky Statutes (under which authority was claimed for the passage of the ordinance complained of), were less explicit as to the subject and matters with respect to which cities of the second class may exercise the powers it confers, the closing sentence thereof 'and any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon this general power,' would justify us in saying that the power conferred upon municipalities (second class) is not confined to the subjects or matters therein enumerated but may be exercised by it as to others of a like character not mentioned, which may come within the general scope of the police power of the State." "Commonwealth v. Reinke C. M. Co., 117 Ky., 885; C. & O. Ry. Co. v. City of Maysville, 24 Rep., 615; Crowley v. Christensen, 137 U. S., 86; South Covington Railway Co. v. Berry, 93 Ky., 43.

It is argued, however, that as the district of Clifton is not a "town or city" and can not, for that reason, exercise many of the powers which have been conferred by the Legislature upon such municipalities, the powers conferred upon its board of trustees by the act creating the district cannot be given the liberal construction that is applied to the powers conferred by the Constitution and laws of the State upon cities and towns. While it is obviously true that the words "cities and towns," as used in the Constitution and Statutes, do not embrace a district or quasi municipality such as the district of Clifton, the latter is one of the "other municipalities" mentioned in the Constitution and Statutes. It is of like character to the District of the Highlands, of which it was said by this court in City of Covington v. District of Highlands, 113 Ky., 612: "The district is not a town, and, therefore, could not be properly classified as such, as the Legislature was required by the Constitution to do."

Again, in Dyer v. City of Newport, 29 Rep., 656, we in speaking of this district, said, "It is a municipality, created by an act of the Legislature prior to the adop-

tion of the present Constitution. Its legal autonomy has not since been changed. *  *  * Clifton is authorized by provisions of its charter to enact by-laws and ordinances for the general welfare of the municipality and its inhabitants, not inconsistent with the Constitution and laws of the United States and this State. Under that provision, and in the exercise of its police power, it has the right to provide for the public health, and the public safety against fire, by contracting for a supply of water to be furnished either by the municipality or by another under contract with it.''

In City of Covington v. District of Highlands, supra, we also held that the right of the district to levy and collect taxes could not be questioned, this conclusion being based principally upon the fact that the provisions of the Constitution relating to taxation, in using the terms ''towns, cities, taxing districts, and other municipalities,'' contemplated the continued existence of certain municipalities in the Commonwealth which could not be classified as ''cities or towns'' but are embraced by the phrase ''other municipalities.''

In Commonwealth v. Petrie, 122 Ky., 20, we likewise held that certain provisions of the charter of the District of Highlands, relating to the granting of liquor licenses, were still in force, citing the previous case of City of Covington v. District of Highlands, to the effect that the autonony of the district had been upheld, and then proceeded to hold that the provisions of the charter of the District of Highlands, respecting liquor licenses, were not in conflict with the Constitution, or subsequent legislation.

In view of the authorities supra, we must still recognize the district of Clifton as a municipality, though not a city or town; and this being so, in looking to the provisions of the act incorporating it to ascertain what powers its board of trustees may properly exercise, those provisions must be measured by the same rules of contsruction that apply to similar provisions found in the charters of classified cities and towns of the State. It is our opinion, therefore, that the passage of the ordinance, under which the prosecutions against appellee were had, was authorized by the provisions of the act incorporating the district of Clifton, by virtue of which its board of trustees exercised the right to adopt it; and if they had the power to pass the ordinance, the

penalties imposed for violations of its provisions may be enforced. March v. Commonwealth, 51 Ky., 25.

The second question raised by the appeal should, in our opinion, be given an affirmative answer.

When the district of Clifton was incorporated, a police court was created and a police judge provided, by the act of incorporation, which conferred upon that court jurisdiction to try all infractions of the ordinances of the district. The existence of the police court and that of the office of police judge, legally continued until the adoption of the present Constitution, which abolished both, leaving the district without a special tribunal such as is common to cities and towns. This was the conclusion reached in Morris v. Randall, et al., 129 Ky., 720, in which we held that as the Constitution, sections 109, 135 and 143, vests the judicial power in certain designated courts, and only provides for the establishment of a police court in each "city and town," and declares that all laws inconsistent with the Constitution shall cease on its adoption, it repealed so much of the charter of the district of Clifton as provides for a police court thereof, the words "city and town" referring to the cities and towns classified by section 143.

But, does it follow that the district of Clifton, because it cannot legally maintain a police court, shall have no means of enforcing obedience to the ordinances legally passed by its board of trustees for the safety and welfare of its population of two thousand people? We are unwilling to so declare and think there are several reasons for holding otherwise. The power conferred upon the board of trustees of the district of Clifton by the Legislature to pass ordinances for the government of Clifton and well being of its inhabitants, would, indeed, be a vain thing, if there were no judicial tribunal with jurisdiction to punish those who offend against them. Such a deplorable situation was never contemplated by the grantors of Clifton's charter or the framers of the Constitution, and if allowed to exist would set at naught both law and order. The law has created the district of Clifton. Incident to its creation is the authority to exercise the powers committed to its trust and it can be protected in the exercise of these powers only by the judicial officer applied to in the instant case. This was in the contemplation of the court when, in the opinion in Morris v. Randall, et al., supra, it said: "While it may be a hardship to the citizens of

the district of Clifton to deprive them of a police court, this argument cannot stand as against the imperative provisions of the Constitution, which were intended to provide a uniform judicial system as to the establishment of courts, and as to their respective jurisdictions. However, it may be said that the abolition of the police court in the district of Clifton should not prove disastrous, as law and order can be maintained in the district through the magistrates and other peace officers of the county of Campbell.''

Whether the declaration here made can be maintained remains to be determined. Section 142, Constitution, provides: ''The jurisdicton of justices of the peace shall be co-extensive with the county and shall be equal and uniform throughout the State.'' It is insisted for appellee that by adjudging jurisdiction in the appellant as a justice of the peace to try offenses against the ordinances of Clifton, the uniformity and equality of jurisdiction, demanded by the above provision of the Constitution would be nullified, because justices of the peace in counties which contain no municipality like Clifton, would not have jurisdiction to try infractions of municipal ordinances of like character. The fallaciousness of this argument is manifest. One might as well argue that greater jurisdiction is conferred upon justices in counties wherein railroads exist, than in those counties without railroads, because the former have jurisdiction to attach or garnish money in the hands of railroads due employees.

A more striking illustration of the fallacy underlying this contention of appellee's counsel, is found, however, in the provisions of the Constitution and Statutes as to the jurisdiction of quarterly courts. Section 139 of the Constitution provides for the establishment in each county of a quarterly court; ''the jurisdiction of which shall be uniform throughout the State.'' The statute, amendment to section 1093 (Carroll's Edition, 1909), provides: ''And quarterly courts and judges thereof may and shall take jurisdiction of all city ordinance in towns of the sixth class, imposing fines and forfeitures by ordinances, in which said towns there is no acting or qualified police judge, and shall have full power to render and to enforce all judgments rendered thereon, and such judgments shall be for the use and benefit of said towns of the sixth class.''

Will it be contended that because quarterly courts of counties in which there is no town of the sixth class do not have jurisdiction of ordinances, and the violations thereof, that fact would destroy uniformity of jurisdiction among quarterly courts of the State? Surely not.

It is undoubtedly true that police courts are given, by section 3147, Kentucky Statutes, exclusive jurisdiction of all prosecutions for violations of the ordinances or by-laws of the cities or towns in which they exist; but, as there is no police court in the district of Clifton, which is not a town or city, the jurisdiction of prosecutions for violations of its ordinances or by-laws must be in some court other than a police court. It is clear that such jurisdiction is not vested by law in the quarterly court of Campbell County, because, as we have observed, quarterly courts can take jurisdiction of municipal ordinances, and prosecutions for violations thereof, only in towns of the sixth class which have no acting or qualified police judge. Justices of the peace, however, have jurisdiction of all *penal* cases exclusive of circuit courts where the punishment is limited to a fine not exceeding twenty dollars, and jurisdiction concurrent with circuit courts of all penal cases, the punishment of which is limited to a fine not exceeding one hundred dollars or imprisonment not exceeding fifty days, or both. The prosecutions instituted against appellee, as are all prosecutions for violations of the ordinances of the district of Clifton, are penal cases, and it is our conclusion that appellant or any other justice of the peace of Campbell County, has jurisdiction of offenses against the ordinances of the district of Clifton under and by virtue of the provisions of section 1093, Kentucky Statutes. It, therefore, follows, that the prosecutions against appellee in the instant case were properly instituted and conducted in the court of appellant; and further, that the judge of the circuit court erred in granting the writ of prohibition prayed in the petition.

For the reasons indicated, the judgment is reversed and cause remanded, with directions to sustain the demurrer to the petition and dismiss the action.

Whole court sitting.