## Rash v. Louisville & Jefferson County Metropolitan Sewer District et al.

January 21, 1949.

444

James W. Stites and Doolan, Helm, Stites & Wood for appellant.

Gilbert Burnett, Director of Law, and John Moreman and Blakley Helm, Assistant Directors of Law, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—

Affirming in part, reversing in part.

The suit challenges the constitutionality of an act of the General Assembly amending Chapter 76, Kentucky Revised Statutes, under which the appellee, Louisville and Jefferson County Metropolitan Sewer District, was established and is functioning.

The constitutionality of the statute, enacted in 1946, was declared in Veail v. Louisville & Jefferson County Metropolitan Sewer District, 303 Ky. 248, 197 S. W. 2d 413. It has been before us for construction in several later cases. The acts of the 1948 session of the legislature not having been published, even at this late date, we must refer to this Act as Senate Bill No. 166, although the amended sections are published in the 1948 Edition of the Statutes.

The title of the Act is as follows: "An Act relating to adequate sewer and drainage facilities in cities of the first class and in counties containing such cities, amending Section 76.060, Subsection (7) of Section 76.080, Subsection (10) of Section 76.080 of the Kentucky Revised Statutes, subsection (5) of Section 76.030 of Kentucky Revised Statutes and creating a new Section relating to such facilities, to-wit: Number 76.091 Kentucky Revised Statutes."

I. The appellant maintains the requirement of Section 51 of the Constitution that the subject of a legislative act shall be expressed in the title is violated. The argument is that the word "adequate" in the title is deceptive and renders it an untrue index of the body of the Act as in Engle v. Bonnie, 305 Ky. 850, 204 S. W. 2d 963. It is submitted that the reader of the title would naturally and justifiably be led to understand that the Act dealt with increasing the sufficiency and usefulness of sewer and drainage facilities, while, as a matter of fact, the adequacy of those facilities is not the subject of the law. Strictly construed that is true. The use of the word "adequate" was probably suggested or induced by the statement at the beginning of the original enabling act as to its purpose. The word seems to be mere surplusage, though if regarded as meaning efficient, it would not be inappropriate from the assumed viewpoint of the sponsors of the Act. We think the title is good.

II. We consider Sections 2 and 3 of the Act, which undertake to amend Subsections (7) and (10) of 76.080.

The Act publishes Subsection (7) as thereby amended as follows: "(7) To make bylaws and agreements for the management and regulation of its affairs and

for the regulation of the use of property under its control and for the establishment and collection of sewer rates, rentals and charges, which sewer rates, rentals and charges, applicable within the limits of a city of the first class, shall be subject to the approval, supervision and control of the legislative body of such city as hereinafter provided.'' The change is the addition of the clause beginning ''which sewer rates, rentals and charges.''

Subsection (10) as amended and published reads as follows: ''(10) To fix and collect sewer rates, rentals, and other charges, for service rendered by the facilities of the district, which sewer rates, rentals, and other charges, applicable within the limits of a city of the first class, shall be subject to the approval, supervision and control of the legislative body of such city as hereinafter provided.'' The change is the addition of the clause which likewise begins ''which sewer rates, rentals, and other charges.''

Section 51 of the Constitution is readily divisible. The first part confines an act of the General Assembly to one subject, which, as we have stated, must be expressed in the title. The second part reads: ''* * * no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length.''

In Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017, 1023, Judge Carroll, who was a distinguished member of the Constitutional Convention, in behalf of the Court, construed this part of Section 51 and set forth its specific application to various classes or kinds of legislative enactments. The following is of application here: ''(b) That when it is proposed to revise or amend one or more sections of the Kentucky Statutes, or an act, the body of the new act should contain the section or sections as they will read when revised or amended, if it is proposed to re-enact or leave in force any part of the section or sections that are amended or revised. If, however, it is intended to repeal one or more sections, then it is not necessary to set forth in the body of the act the section or sections repealed.''

In Edrington v. Payne, 225 Ky. 86, 7 S. W. 2d 827, it was held by a sharply divided court that this provision of the Constitution does not prohibit the amendment of a particular paragraph of a previous legislative act, which was ordinarily published as a separate section of the statutes, when the paragraph is republished as amended. One of the reasons assigned in the majority opinion was the repeated decisions of the Court that it was proper to amend any section of the Kentucky Statutes. The subsection of the Act had been in fact published as a separate section. It may be said that in the prospective application of that decision it was undoubtedly presupposed that the subsection of an act being amended is sufficient in and of itself so that it in fact constituted a law within the meaning of the terms of Section 51 of the Constitution, and that there would be the same self-sufficiency when so amended.

In the present case neither of the subsections of KRS 76.080 proposed to be amended or as amended conforms to Section 51 as interpreted in the Spencer and the Edrington cases. . Before and after amendment each is incomplete both in grammatical construction and as a law. It has neither subject nor predicate and standing alone is meaningless. The insufficiency arises from the fact that that part of 76.080 which gives the two subsections meaning is omitted and is not published in the extensions. It reads: "The district created under the provisions of this chapter is empowered." Each of the following eleven subsections or paragraphs is dependent upon this statement. They constitute a list of the powers thereby conferred. It is, therefore, an integral part of each of them. Without its republication in the Act it was necessary that the members of the legislature resort to the statutes to ascertain its meaning. It was this situation that the constitutional provision was intended to avoid. This part of the bill is a very clear violation of Section 51 of the Constitution and must be declared invalid.

III. We consider Sections 1 and 4 of the Act, which are in the same category.

The title states that the Act amends Section 76.060 and Subsection (5) of 76.030. Each is republished as amended, and the Act conforms to Section 51 of the

Constitution as interpreted in the Spencer and Edrington cases, supra. But we are of opinion that they violate other provisions of the Constitution. These grounds have not been raised by counsel. But having final authority to determine the constitutional validity of legislative acts, we are impelled by that responsibility to examine the Act for ourselves before declaring it valid.

(a) The original of KRS 76.060 sets forth the officers to be elected by the Board of the Metropolitan District and matters in relation to their services. It authorizes the Board to employ and remove "professional and technical advisors, experts, and other employes, skilled or unskilled, as it deems requisite for the performance of its duties." Section 1 of the present Act adds as an exception that the Board "may not employ a lawyer or lawyers." It declares that "the director of law, otherwise city attorney, of each such city" and his staff shall "render all legal services pertaining to the said city and county metropolitan sewer district and its board." A provision is added that, "if adverse legal positions arise as between such city on the one hand and such district and board on the other," the Board may employ lawyers "upon such terms as the legislative body of such city may authorize by ordinance." There is no antecedent for the words "such city," but it may be presumed they refer to any city of the first class which, with the county, organizes a metropolitan sewer district under the enabling statute. In short, this amendment makes the Director of Law of Louisville the attorney for the District Board whose jurisdiction and powers extend over the whole of Jefferson County. In case of litigation with the city, the city may permit its adversary to employ lawyers subject to whatever terms the Aldermen may prescribe.

(b) The title states that the Act creates a new section relating to the sewer and drainage facilities of the District. Section 5 so enacted may be thus summarized: It vests in the legislative body of the city "visitorial powers" over the District and its Board and over its "business, activities and affairs." It authorizes the legislative body to inquire into and examine all the business and affairs of the Board as it may desire and requires the Board and its officers to furnish any informa-

tion called for. It authorizes the city legislative body by ordinance to change the "sewer rates and other charges applicable within the limits of the city" as it may deem proper, provided that no change shall impair the obligation of any contract or the integrity of any indebtedness of the District or "cripple, impede or impair" its operations. In short, this amendment makes the Board of Aldermen of Louisville the superior and controlling body and extends its powers and jurisdiction over all of Jefferson County. It does so because whatever change the Aldermen may make in the rates and charges fixed by the Sewer Board for city users of the system necessarily affects the rates charged users in the county outside the city limits. While the Sewer Board may impose a reasonable differential between the two classes (Louisville & Jefferson County Sewer District v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S. W. 2d 122), the system is a unit and is operated as such. Whatever affects part of its revenues obviously affects all.

This act deals with distinct municipal corporations. When the Metropolitan Sewer District was established under the enabling Statutes, Chapter 76, Kentucky Revised Statutes, it became an independent body politic charged with administration of designated affairs. It was created by the sovereign power of the state as "a public body corporate, and political subdivision." KRS 76.010. The statute constitutes its charter. It exercises delegated powers of government which vitally affect the public health of the entire county. The Constitution in several sections recognizes the existence, present and future of a municipal corporation other than a county, city, town or taxing district. Sections 157, 158, 159, 161, 164, 165, 180, 181. The Metropolitan District is a separate entity acting for its own purposes and possessing defined, though limited, powers of a municipal community. It meets the conventional descriptions or definitions of a "municipality." McQuillin, Municipal Corporations, Sections 126, 128; City of Covington v. District of Highlands, 113 Ky. 612, 68 S. W. 669; Gleason v. Weber, 155 Ky. 431, 159 S. W. 976; Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. 2d 606. Obviously nothing need be said concerning the character of the City of Louisville.

Section 165 of the Constitution declares that "no person shall, at the same time, fill two municipal offices, either in the same or different municipalities, except as may be otherwise provided in this Constitution."

It is the purpose of the Constitution and a high policy of law not to permit the same person to fill two incompatible offices at the same time. This but recognizes that it is the duty of a public officer or servant to discharge his duties uninfluenced by the duties and obligations of another office, whatever the title or duties may be. It is to that end that we have this express prohibition of holding two municipal offices and certain others without regard for compatibility or incompatibility or for consistent or conflicting interests as a matter of fact. Sections 44, 165, 237, Kentucky Constitution. Thus an act of the legislature which authorized the Board for Louisville and Jefferson County Children's Home to serve as the board of education of an independent school district and the Superintendent of the Home to serve as the superintendent of the school was held to violate these constitutional provisions. This was because the former were city and county officers or employees and the latter state officers or employees, although the respective offices are quite consistent. Williams v. Board for Louisville & Jefferson County Children's Home, 305 Ky. 440, 204 S. W. 2d 490.

The amendment of KRS 76.060 by this present Act would make the Director of Law of the City of Louisville the Director of Law of the Sewer District, another municipality. He would fill two municipal offices.

The enactment of Section 76.091 would confer upon the Board of Aldermen of the City the power to change or fix rates for services rendered by the Sewer District throughout Jefferson County, as we have described.

As stated in McQuillin, Section 283, "It is a self-evident proposition that two lawfully and fully organized public or municipal corporations cannot have jurisdiction and control at one time of the same population and territory and exercise like or similar powers in the same boundaries." This is recognized in Commonwealth v. Stahr, 162 Ky. 388, 172 S. W. 677. The same section of McQuillin continues: "However, in the absence of

constitutional restrictions no objection exists to the power of the legislature to authorize the formation of two municipal corporations in the same territory at the same time for different purposes, and to authorize them to co-operate so far as co-operation may be consistent with or desirable for the accomplishment of their respective purposes.'' We have several instances where municipal corporations organized for different purposes properly include the same territory. Among such are the present situation, school districts and drainage districts; but there is no conflict in operation for each deals with different affairs. These amendments would result in dual management of the same facilities. They would subordinate the authority of the Sewer Board to the power of the Board of Aldermen, and effectually place the Aldermen as well as the city attorney in two municipal offices, contrary to the mandate of the Constitution.

Moreover, these amendments would extend the powers of the city government beyond its corporate geographical limits without amendment of the city's charter, the source of its power. Without such, the city has no extraterritorial power. Its jurisdiction ends at its municipal boundaries. City ordinances and officers cannot operate beyond its corporate area, except by certain classes of contract, or under a power implied to match responsibility imposed or necessary to effectuate what is expressed. Smith v. City of Raceland et al., 258 Ky. 671, 80 S. W. 2d 827; Jefferson County Fiscal Court et al. v. Jefferson County ex rel. Grauman, 278 Ky. 785, 129 S. W. 2d 554, 122 A. L. R. 1151.

We are therefore constrained to hold that these two sections of the Act are unconstitutional and invalid.

IV. This leaves only Section 5 of the Act which amends Subsection (5) of KRS 76.030. The original provision in the Act of 1946 was an unnumbered paragraph, but it was published in the Statutes as a subsection. It provided that members of the Board should receive salaries not to exceed $3,000 per annum. The present Act substitutes the following: ''(5) The members of the board shall be paid ten dollars for each meeting of the board attended by such member, but no member of said board shall be paid more than two hundred and forty dollars during any fiscal year of the board, nor

for more than twenty-four meetings held during any fiscal year of said board.''

The Board deals with the health and comfort of over five hundred thousand inhabitants of Jefferson County. It has the responsibility of property which cost perhaps fifty million dollars. It has the duty of operating and maintaining a massive and complicated sewage system, and of improving and extending it according to the needs of the people of Jefferson County. The Board hires and supervises hundreds of employees. As this record discloses, it is now proposing to construct sewage disposal plants that will cost several millions of dollars and finance the expenditure through revenue bonds. These responsibilities demand great administrative ability. Yet this amendment requires that the members of the Board charged with these responsibilities be paid no more for a day's service than the wages of an average laborer and confines their entire compensation to twenty dollars a month. Possibly it was believed that competent men would contribute their public services. To be sure, this is a matter of legislative policy. We have repeatedly affirmed and now reaffirm that we do not conceive it to be the judicial function to pass upon the wisdom, reasonableness or appropriateness of legislation. We make these observations in view of the unusual and stringent severability provision of the Act, to which we are impelled to conform. It reads: ''Section 6. If any clause, sentence, paragraph, or other part of this Act, shall for any reason, be finally adjudged by any court of competent jurisdiction to be invalid or unenforceable, such judgment shall not affect, impair, nor invalidate, the remainder hereof, but shall be confined in its operation to the clause, sentence, paragraph, or other part hereof, directly involved in the controversy in which such judgment shall have been rendered.''

In the chapter of the Revised Statutes which deals with the construction to be given legislative acts is the general provision as to what shall be deemed the intent as to severability. KRS 446.090. Though stated in the negative, it is in part that the courts should hold every act severable and sustain the valid parts ''unless the remaining parts are so essentially and unseparably connected with and dependent upon the unconstitutional

part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part.'' We do not believe the General Assembly would have enacted Section 5 of the present Act except as a part of the general scheme to lodge superior and controlling power in the City Board of Aldermen, which we are compelled to hold invalid. But the specific severability provision of the Act itself, above quoted, is so framed as to nullify the general declaration as to the legislative intent, which, after all, is but the codification of a uniform judicial principle of constitutional interpretation. Hence, we are constrained to hold this section to be constitutional and valid.

V. Two questions are raised which are not provisional or conditioned upon a decision that the 1948 Act is valid.

KRS 76.090(3) authorizes a metropolitan sewer district to enter into a contract with ''any public water company or service providing for the discontinuance of water service to'' the users of sewers delinquent in payment of their sewer rates. The question is whether the Louisville Water Company is such a public service or system. We take judicial notice that Jefferson County is the only county containing a city of the first class, to which Chapter 76 of the statutes may apply, and it is common knowledge that the Louisville Water Company is the only system which supplies the city and environs with water. This court has held that the corporation, though a separate entity, is as a practical matter not only a public service company but an operating facility of the city. Ryan v. City of Louisville, 133 Ky. 714, 118 S. W. 992; Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S. W. 928; Dolan v. Louisville Water Co., 295 Ky. 291, 174 S. W. 2d 425. There is no doubt that it is a public service or system referred to in the statutes. And we can see no reason why the Water Company under a contract with the Sewer Board may not discontinue its service to delinquent sewer users. The use of both services is interdependent. Compare Francis v. City of Bowling Green, 259 Ky. 525, 82 S.W.2d 804; Louisville & Jefferson County Metropolitan Sewer Board v. Barker, 307 Ky. 655, 212 S. W. 2d 122; State v. City of Miami, 157

Fla. 726, 27 So. 2d 118; Gatton v. City of Mansfield, 67 Ohio App. 210, 36 N. E. 2d 306; Sharp v. Hall, 198 Okl. 678, 181 P. 2d 972. The trial court properly so adjudged.

Another question is whether bonds issued by the Metropolitan Sewer District and the income therefrom are free from ad valorem and income taxation. These bonds are like other revenue bonds issued by municipalities or the state agencies for the construction of bridges and other public improvements. The Act expressly declares the bonds and income therefrom to be exempt from taxation since the Sewer Board performs a governmental function. KRS 76.210. We regard the exemption constitutionally valid and are of opinion the court properly held them not subject to taxation. Klein v. City of Louisville, 224 Ky. 624, 6 S. W. 2d 1104; Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. 2d 392; Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. 2d 583; J. D. Van Hooser & Co. v. University of Kentucky, 262 Ky. 581, 90 S. W. 2d 1029.

So much of the judgment as declares the first four sections of the Act of 1948 to be constitutional is reversed. In all other respects it is affirmed.

Judge Cammack dissents as to so much of the opinion as holds Section 5 of the Act of 1948 to be valid.