Jack M. **LOWERY**, Jr., etc., Appellant and Cross-Appellee,

v.

**COUNTY OF JEFFERSON**, Kentucky, et al., Appellees and Cross-Appellants.

Lee J. **DUVALL** et al., Appellants,

v.

**COUNTY OF JEFFERSON**, Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

Sept. 22, 1970.

As Modified Oct. 16, 1970.

170

Charles W. Ferguson, William G. Colson, Louisville, for Jack M. Lowery, Jr., etc.

J. Bruce Miller, County Atty., Marshall, Cochran, Heyburn & Wells, and Charles S. Cassis, Middleton, Seelbach, Wolford, Willis & Cochran, and Ben J. Talbott, Jr.,

Grafton, Ferguson, Fleischer & Harper, and Jo M. Ferguson and William W. Davis, Louisville, for County of Jefferson, Kentucky, and others.

William T. Warner, Louisville, for Lee J. Duvall, and Thomas O. Garvey, Jr.

David C. Brown, Stites & McElwain, Louisville, amicus curiae.

CULLEN, Commissioner.

Presented for review on these appeals and cross-appeal is a judgment of the Jefferson Circuit Court making declarations with respect to the validity and construction of Chapter 155 of the 1970 Acts of the Kentucky General Assembly, which provides for the establishment and functioning of a "County Community Improvement District" in any county containing a city of the first class (Jefferson County is the only such county).

The judgment was entered in an action brought by Jefferson County in which one Jack M. Lowery, Jr., was named as the defendant, individually and as a representative of all citizens, residents and taxpayers of the county. In its complaint the county sought affirmative answers to six stated questions concerning the validity and construction of the 1970 Act. Lowery answered, asserting that the questions should be answered in the negative. Subsequently Lee J. Duvall and Thomas O. Garvey, Jr., as citizens, residents and taxpayers of Jefferson County, intervened as defendants and sought a judgment dismissing the action on the ground that no justiciable controversy existed between the county and Lowery. Other interventions were made by individuals and organizations in support of the county's position in the action.

The judgment held that there was a justiciable controversy, and made declarations answering in the affirmative (favorably to the validity of the Act) all of the six questions in issue, except for a partially negative answer to one of the questions.

Lowery has appealed, asserting that the judgment is erroneous as to all of the affirmative answers. The county has cross-appealed, claiming error in the one negative answer. Duvall and Garvey have taken a separate appeal (consolidated here with the Lowery appeal) in which they maintain that the action should have been dismissed because of the absence of a justiciable controversy.

We shall consider first (after setting forth the essential facts) the issues presented on the Lowery appeal and the county's cross-appeal. Then we shall consider the question raised by the Duvall-Garvey appeal.

The purpose of the "County Community Improvement District," as stated in the Act, is to erect "buildings and related facilities" for any "governmental unit" or combination of such units in the county. "Buildings and related facilities" is defined to include such things as structures, sites, parks, forests, wharves, floodwalls and boats. "Governmental unit" is defined to mean the county, any city in the county, a corporate agency thereof, or any district, authority, or municipal corporation in the county except a school district.

The Act provides without elaboration or qualification that the *county court* "may establish" the district. The boundaries of the district are to be coterminous with the boundaries of the county. After the district has been established the *county judge,* with the approval of the *fiscal court,* is to name four members to the "Board of Commissioners" of the district. Thereafter any city within the first four classes may elect to participate in the administration of the district, by appointing additional board members. A city of the first class is entitled to appoint four board members, while a city of the second, third or fourth class is entitled to appoint only one.

The board of commissioners of the district is authorized to propose improvement projects, by resolution describing each project and stating its estimated cost, which

resolution is forwarded to the *fiscal court*. The *fiscal court* then is to prepare a question to be submitted to the voters of the county at the next regular November election, giving the voters a choice of approval or disapproval. The question must be so framed that a voter may exercise a separate choice as to each "individual project." If a majority of those voting on the question of a "particular project" approve that project, the project shall be considered to have been approved.

To provide for or contribute toward the financing of an approved project the board of commissioners of the district is authorized to request of the *fiscal court* the levy of an ad valorem tax on all property in the district subject to local taxation, at a rate which shall not exceed the amount necessary to amortize any bonds issued or proposed to be issued to finance the approved project (plus operating expenses of the district) but which tax shall not in any event, for all projects, exceed a rate of 10 cents per $100 of assessed value. In two places in the Act it is stated that the fiscal court *shall* levy the requested tax if required to amortize bonds issued for an approved project, but in another place the Act states that the board of commissioners of the district shall have the power to "finance and construct" buildings and related facilities "after approval of any proposed project by resolution of the fiscal court," which indicates that the fiscal court has a veto power as to any project; and in another place the Act declares that nothing in the Act shall be deemed to require the fiscal court to levy a tax in any year except to the extent necessary to amortize *general obligation bonds* (for the issuance of which the Act makes provision, conditioned upon a "constitutionally required vote" on the question of incurring the. indebtedness).

After all necessary approvals have been obtained, the board of commissioners of

the district is authorized to undertake the construction of an approved structure and to issue revenue bonds to defray the cost. Authority is given for leasing of the structure to the governmental unit for which it was planned, with the rentals being pledged to payment of the bonds. The Act contains the standard provisions for payment of rentals by the *lessee* unit, but it further provides that the *lessor* district may agree, on a year-to-year basis, to contribute a portion of the rental payments from its own funds. The obvious object of the latter provision is to utilize the tax resources of the district to help amortize the revenue bonds.[1] The district is given all powers that are granted to governmental units by KRS Ch. 58 with respect to the issuance of revenue bonds.

■ The Act provides that all expenditures proposed by the district must be submitted to the county judge for approval, subject to confirmation by the fiscal court, but there is an exception to the effect that after the fiscal court has approved a project, the district board shall have sole authority to determine whether or not to make an annual renewal of an agreement to contribute district funds toward rental payments under a lease. However, by virtue of the provision of Section 6 of the Act which frees the fiscal court of any obligation to levy a tax for the district in any year except to the extent needed to amortize *general obligation bonds,* it would seem that the renewal authority of the board would be limited to committing funds already in the hands of the board or which will be received by the board *if* the fiscal court chooses to levy the tax.

The foregoing provisions of the Act are all that are necessary to be mentioned for the purposes of this opinion.

Since a knowledge of the circumstances which prompted the passage of the Act and of the object which it was intended to

---

1. There is provision in the Act for the issuance of general obligation bonds, following a special vote in accordance with Section 157 of the Constitution of Kentucky, but apparently no such vote or issuance is planned for the near future.

achieve is essential to a proper contruction and evaluation of the Act, we have given attention to some facts of common knowledge and others brought out in evidence in the circuit court. Under Section 157 of the Kentucky Constitution a county may be given authority to levy an ad valorem tax at a rate of as much as 50¢ per $100 of assessed valuation.[2] However, under the "roll-back" legislation of 1965, KRS 68.245, the maximum rate that Jefferson County statutorily could levy was limited to approximately 20¢ per $100. A comparable limitation was placed on cities, KRS 132.027. The evidence in the instant case was that Jefferson County and Louisville are unable to finance direly needed public improvements from existing tax revenues. The obvious and admitted purpose of the Act here in question was to provide a source of additional revenue. This purpose could have been accomplished, it would seem, by legislation simply loosening up the roll-back limits. However, the legislature did not choose to go that route.

We confront, now, the issues raised on the Lowery appeal and the county's cross-appeal.

The first question presented to and answered in the affirmative by the circuit court was whether a district of the character provided for by the Act may validly be established by the method prescribed in the Act. Appellant Lowery, in arguing that this question should have been answered in the negative, submits four reasons. One is that the purported district is in actuality merely an arm of the county government and not a genuine, true, separate, independent district. We think this proposition addresses itself to the meat of the whole case, wherefore we shall give it primary attention.

■ The purpose of creating any kind of separate taxing district would seem to be to provide financing for the accomplish-

ment of a public purpose which for some reason or another cannot effectively be accomplished through the facilities and resources of a traditional municipality such as a county or city. Examples are fire protection districts, drainage districts, library districts, health districts, road districts, flood-control districts, hospital districts, etc. But if such a district is to have the power to impose taxes separate and apart from county or city taxes, and not chargeable to the rate limit of any county or city, it is plain that the ultimate power to decide whether the tax shall be levied cannot be vested in the governing body of a county or city, for then the purported district is in reality nothing but a subterfuge to evade limits on tax rates. For illustration, if the fiscal court of a county has sole voice as to whether or not a particular tax shall be levied upon the taxpayers of the county, it would be pure sophistry to say that the tax is not a *county* tax.

■ Under the provisions of the Act here in question the fiscal court of the county in which the district is created has the power of ultimate decision on *every* question of any importance, with the single exception that it cannot refuse to levy a tax to pay *general obligation bonds*. The fiscal court has veto powers over any project and over all expenditures. It is true that the Act in two places states unqualifiedly that the fiscal court "shall" levy the tax requested by the district board, and in a third place states that the district board has sole authority to determine whether or not to renew a rental contribution, but they must yield to the ultimate stipulation of Section 6 that *nothing in the Act* shall be deemed to require the fiscal court to levy a tax in any year except to the extent necessary to amortize *general obligation* bonds. The latter stipulation is a typical *proviso* qualifying and restraining previous generalities in the Act. The circuit court, in

2. In Rea v. Gallatin County Fiscal Court, Ky., 422 S.W.2d 134, this court held that the legislature could confine counties to a lower rate than the maximum 50¢ rate.

the judgment in this action, held that merely a question of *redundancy* was presented, and he simply struck out the words "general obligation," so as to require the fiscal court to levy the requested tax to the extent necessary to amortize *revenue* bonds as well as general obligation bonds. It is our opinion that the judgment is erroneous in that respect.

It is our conclusion that the Act in question does not validly provide for the establishment of a separate, independent taxing district, and that the judgment is erroneous in holding otherwise.[3] However, this does not mean that the entire Act is void. It is our opinion that the district board may be established and function under the terms of the Act as a corporate arm of the *county government*. The tax, upon voter approval of projects, may be levied as a *county tax,* thus accomplishing the basic objective of the Act to obtain some relief from the limits of the roll-back legislation.[4] Of course this means (1) that the money may be expended only for projects that constitute valid *county* purposes, see City of Lexington v. Hager, Ky., 337 S.W.2d 27; and (2) that any tax levied under the Act is to be counted under Section 157 of the Kentucky Constitution as part of the regular tax rate of the county.

This brings us to the other reasons advanced by appellant Lowery for holding the basic provisions of the Act invalid. First, Lowery argues that the provisions of the Act for levy of the tax on the basis of voter approval of projects, without the voters being given an opportunity to vote specifically on the question of a tax levy or their even being given formal notice that a tax will follow from a favorable vote on a project, are invalid. This argument is tied in with the argument that a taxing district cannot validly be created without direct voter approval or without voter voice in its government. The whole question becomes less significant in view of our holding, hereinbefore announced, that no separate taxing district will in fact be created. The tax to be levied will be one which the fiscal court could have levied *without a vote* except only for the *statutory* limit imposed by the roll-back law. Thus the situation is comparable to that in Maysville & L. Turnpike Road Co. v. Wiggins, 104 Ky. 540, 47 S.W. 434, where this court held valid an Act providing for the levy of a county tax (within the regular rate limit) for free county roads, upon a popular vote favoring such roads, though the proposition submitted to the voters did not inform them that a tax would ensue. We accept *Wiggins* as controlling here.

Appellant Lowery suggests that the provision of the Act for establishment of the district by order of the *county court* is invalid because the establishment of a municipal corporation is a *legislative* function whereas the Act undertakes to make it a *judicial* one by giving the county court *discretionary* power as to establishment of a district. The Act says simply that the county court "may establish" a district. No fact-finding is called for nor is there any suggested basis for a discretionary decision. Despite the use of the word "may" we think the Act does not contemplate any choice by the county court. Rather we think the Act intends that the district shall exist by virtue of the passage of the Act, and that the county court simply notes of record the fact of such existence. Actually this is not a matter of much importance, because (1) the so-called district amounts to nothing more than a county agency, and (2) whether the district shall ever have any real effect depends entirely on decisions to be made later by the fiscal court and by the voters. We find no invalidity here.

Lowery maintains that the Act is invalid because from a practical standpoint

---

3. The General Assembly could validly have created an autommomous district, free of fiscal court control.

4. Note should be made that the validity of the roll-back law has not been decided by this court.

its taking effect depends upon a vote of the people, which is in violation of the prohibition of Section 60 of the Kentucky Constitution against enactment of legislation to take effect upon the approval of any authority other than the General Assembly. It is unnecessary for us to decide whether the *taking effect* of the Act does in fact depend on the approval of an authority other than the General Assembly, because, even if so, Section 60 expressly excludes from its prohibition laws relating to public buildings or improvements and the regulation by counties of their local affairs.

■ We come now to the arguments concerning the decision of the circuit court on the second issue submitted to it for decision, which relates to the form of question to be used in seeking voter approval of a project. The circuit court held that it was sufficient for the question to set forth a clear and concise description of the project and its estimated cost, without stating the amount or duration of the annual tax levy required to finance the project. The court further held that in so framing the question as to allow a separate vote on each project, as required by the Act, structures or facilities having unrelated purposes could not be joined as one project. Appellant Lowery argues that the question should be required to set forth the amount and duration of the tax levy required to finance each project. As stated at an earlier point in this opinion, we do not find merit in this argument. The county, as cross-appellant, maintains that the judgment is erroneous in forbidding the joining of unrelated structures or facilities as a single project. The county argues that Kentucky does not adhere to the "singleness of purpose rule" as concerns elections on public questions, citing City of Louisville v. Board of Park Commissioners, 112 Ky. 409, 65 S.W. 860, and Swann v. City of Murray, 146 Ky. 148, 142 S.W.2d 244. However, we are not dealing here with a rule of common law but with the construction of a particular statute. The

Act in question clearly indicates the intent that the voter shall have a choice of approval or disapproval as to each "individual project" or "particular project." As hereinbefore pointed out, the legislature could simply have raised the roll-back limit and freed the county to impose taxes for public improvements without a popular vote. Instead the legislature chose to give the voters the right of decision. If all proposed public improvements could be lumped together, for submission to the voters, as one project, the voter would have only a limited choice and a narrow right of decision. We think the legislature intended that the voter have a full range of choice. This court in Hulbert v. Board of Education of Louisville, Ky., 382 S.W.2d 389, recognized the objectionable features of "logrolling" and we think the legislature in the Act before us evidenced its policy against it. We are fully in accord with the judgment of the circuit court on the matter of the submission of related structures or facilities for approval of the voters.

■ The next question to be considered (the fourth one answered by the circuit court) concerns the validity of the provision of the Act that authorizes the district board, on a year-to-year basis, to agree to contribute a portion of the rental payments under a lease agreement (thus in effect contributing funds to the amortization of revenue bonds secured by a pledge of the rentals). The circuit court held this provision valid. We concur in this holding. The situation here is entirely different from that in Curlin v. Wetherby, Ky., 275 S.W.2d 934, where the Act undertook to authorize a multiple-year pledge of tax money. However, as hereinbefore indicated in this opinion, the power of the district board to agree, for any year, to contribute rental payments must be confined to payment from such income and revenue as actually has been provided to the board for that year; see Section 157, Ky.Const., and Payne v. City of Covington, 276 Ky. 380, 123 S.W.2d 1045; and the board can

contribute funds only for projects that serve a *county* purpose, for which the general funds of the county could properly be used. The board cannot commit the fiscal court to the levy of a tax for such year, because under Section 6 of the Act the fiscal court is not required to levy a tax for any year except to the extent necessary to amortize *general obligation* bonds.

█ Question No. 5 concerns the validity of the provision of the Act requiring submission of all proposed expenditures of the district to the county judge for approval, subject to confirmation by the fiscal court. The circuit court held this provision valid. Since we are holding that the purported district is not in fact a separate, independent district, but is merely an agency of the county, the basis falls for any argument that the provision is invalid. There is no subjection of one independent municipal corporation to the control of another one, as was the case in Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232.

Question No. 6 relates to the provision of Section 6 of the Act that the fiscal court cannot be required to levy a tax in any year except to the extent necessary to amortize *general obligation bonds.* At an earlier point in this opinion we have stated our holding that the circuit court's answer to this question is erroneous.

This disposes of the Lowery appeal and the county's cross-appeal, leaving for consideration the question raised on the Duvall-Garvey appeal, of whether the case presents a bona fide justiciable controversy.

█ It may be that defendant Lowery, as representative of citizens and taxpayers, has not been a bitter antagonist to the county in the case. However, he has argued the issues honestly and competently, the issues are genuine and have immediacy, are appropriate for decision, and a useful

public purpose will be served by deciding them. We are of the opinion that a justiciable controversy is presented. See Combs v. Matthews, Ky., 364 S.W.2d 647; Board of Education of Lexington v. Harville, Ky., 416 S.W.2d 730; Gatewood v. Matthews, Ky., 403 S.W.2d 716.

On the appeal of Lowery the judgment is affirmed to the extent it conforms with this opinion and reversed to the extent that it fails to conform with this opinion, with directions to enter judgment conforming with this opinion. On the cross-appeal of Jefferson County the judgment is affirmed. On the appeal of Duvall and Garvey the judgment is affirmed.

All concur.