259 S.W.3d 510 (2008)
LOUISVILLE/JEFFERSON COUNTY METRO ETHICS COMMISSION, Agency of the Louisville/Jefferson County Metro Government, Appellant
v.
H.J. ("Bud") SCHARDEIN, Jr., Executive Director of the Louisville/Jefferson County Metropolitan Sewer District; and Derek Guthrie, Chief Engineer for the Metropolitan Sewer District, Appellees.
No. 2007-CA-001356-MR.
Court of Appeals of Kentucky.
July 18, 2008.
*511 John S. Reed, Trevor L. Earl, Louisville, KY, for Appellant.
Laurence J. Zielke, Nancy J. Schook, Hays Lawson, Louisville, KY, for Appellees.
Before CLAYTON and VANMETER, Judges; KNOPF,[1] Senior Judge.

OPINION
VANMETER, Judge.
The Louisville/Jefferson County Metro Ethics Commission appeals the Jefferson Circuit Court's decision holding that the Metro Ethics Code does not apply to employees of the Louisville/Jefferson County Metropolitan Sewer District (MSD). We affirm.
The facts of this case are not complicated. In late 2004, Sarah Lynn Cunningham initiated an ethics complaint against Louisville Metro Council member Bob Henderson, MSD board member William T. Gray, MSD Executive Director H.J. Schardein, Jr., and MSD Engineering Director Derek Guthrie. In response to the Ethics Commission's assumption of jurisdiction, Gray, Schardein, and Guthrie filed a complaint in the Jefferson Circuit Court seeking to enjoin further proceedings before the Ethics Commission. Henderson joined the action as an intervening plaintiff.
After the Ethics Commission sought to dismiss the circuit court action seeking injunctive relief, Henderson filed a motion for summary judgment on the basis that the Ethics Commission had no jurisdiction over the MSD. Schardein and Guthrie joined Henderson's motion. The trial court granted the motion, holding that as a separate corporate entity, the MSD was not an agency of the Louisville/ Jefferson County Metro Government ("Louisville Metro"), and that the Ethics Commission therefore had no jurisdiction over the MSD or its officials. Upon the Ethics Commission's motion to alter, amend or vacate, the trial court held that the Ethics Commission had jurisdiction over Henderson since, as an elected council *512 member, he clearly was covered by the Ethics Code under the authority of KRS 65.003. This appeal follows with respect to Schardein and Guthrie.[2]
Under KRS 65.003, "[t]he governing body of each ... urban-county ... government... shall adopt, by ordinance, a code of ethics which shall apply to all elected officials ..., and to appointed officials and employees of the ... urban-county ... government, or agencies created jointly, as specified in the code of ethics."
The issue presented is whether the MSD is an agency of the urban-county government, Louisville Metro. We hold that it is not.
In Rash v. Louisville & Jefferson County Metro. Sewer Dist., 309 Ky. 442, 449, 217 S.W.2d 232, 236 (1949), Kentucky's highest court went to great lengths to delineate the nature of the MSD's existence:
When the Metropolitan Sewer District was established under the enabling statute, Chapter 76, Kentucky Revised Statutes, it became an independent body politic charged with administration of designated affairs. It was created by the sovereign power of the state as "a public body corporate, and political subdivision." KRS 76.010. The statute constitutes its charter. It exercises delegated powers of government which vitally affect the public health of the entire county. The Constitution in several sections recognizes the existence, present and future, of a municipal corporation other than a county, city, town or taxing district. Sections 157, 158, 159, 161, 164, 165, 180, 181. The Metropolitan District is a separate entity acting for its own purposes and possessing defined, though limited, powers of a municipal community. It meets the conventional descriptions or definitions of a "municipality." McQuillin, Municipal Corporations, Sections 126, 128; City of Covington v. District of Highlands, 113 Ky. 612, 68 S.W. 669 [(1902)]; Gleason v. Weber, 155 Ky. 431, 159 S.W. 976 [(1913)]; Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S.W.2d 606 [(1928)].
See also Louisville & Jefferson County Metro. Sewer Dist. v. Simpson, 730 S.W.2d 939, 940 (Ky.1987) (holding that the MSD is not a city, but a political subdivision of the state); Fawbush v. Louisville & Jefferson County Metro. Sewer Dist., 240 S.W.2d 622, 623-24 (Ky.1951) (holding that the MSD is an independent, autonomous, and economically self-sustaining public corporation, and is an agency of the state). While Simpson was overturned on other grounds by Calvert Invs. Inc. v. Louisville & Jefferson County Metro. Sewer Dist., 805 S.W.2d 133 (Ky.1991), and the Court retreated from the concept that the MSD is an agency of state government, id. at 137, nothing in Calvert Invs. changed the fact that the MSD is a local governmental entity, separate and distinct from Louisville Metro.
While the Ethics Commission seeks to distinguish the holding in Rash by reference to more recent case law, those cases do not support the proposition that the MSD is an agency of Louisville Metro. For example, in Sanitation Dist. No. 1 v. Shelby County, 964 S.W.2d 434 (Ky.App. 1998), this court acknowledged that while a sanitation district "is a political subdivision, or municipal corporation, of the Commonwealth of Kentucky" pursuant to KRS Chapter 220, id. at 435, the creation, existence, and authority of such a municipal corporation are "dependent upon the will and discretion of the Legislature." Id. at 437. Further, the municipal corporation's *513 powers may be enlarged or diminished at the Legislature's discretion. Id. at 438.
In Sanitation Dist. No. 1, the legislature had permissibly expanded the fiscal court's authority over the Sanitation District. Our view, however, is that although the legislature could clearly subject the MSD to the local government's Code of Ethics, thus far it has not done so.
In Phelps v. Louisville Water Co., 103 S.W.3d 46 (Ky.2003), the Kentucky Supreme Court addressed the issue of whether the Louisville Water Company ("LWC") was an agency of the City of Louisville.[3] The court noted:
Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Under Kentucky law, the right to control is considered the most critical element in determining whether an agency relationship exists.
Id. at 50 (citations and internal punctuation omitted). In addressing the City of Louisville's control over the LWC, the Court looked at the LWC board's powers: control and management of the LWC and its properties; ability to contract, to sue and to be sued only in the name of the corporation; and direction of the LWC's day-to-day operations. In addition, the LWC did not depend financially on the City, and the City was not liable for the LWC's debts. The court held that the LWC was not an agency of the City of Louisville.
Similarly, the MSD is "a public body corporate, and political subdivision, with power to adopt, use and alter ... a corporate seal, sue and be sued, contract and be contracted with[.]" KRS 76.010. In addition, under KRS 76.080, the MSD is empowered
(1) To have jurisdiction, control, possession, and supervision of the existing sewer and drainage system of the city of the first or second class; to maintain, operate, reconstruct, and improve the same as a comprehensive sewer and drainage system; to make additions, betterments, and extensions thereto within the district area; and to have all the rights, privileges, and jurisdiction necessary or proper for carrying such powers into execution. No enumeration of powers in KRS 76.010 to 76.210 shall operate to restrict the meaning of this general grant of power or to exclude other powers comprehended within this general grant.
(2) To prepare or cause to be prepared and to be thereafter revised and adopted, plans, designs, and estimates of costs, of a system of trunk, intercepting, connecting, lateral, and outlet sewers, storm water drains, pumping and ventilating stations, disposal and treatment plants and works, and all other appliances and structures which in the judgment of the board will provide an effective and advantageous means for relieving the district area from inadequate sanitary and storm water drainage and from inadequate sanitary disposal and treatment of the sewage thereof, or such sections or parts of such system of the district area as the board may from time to time deem proper or convenient to construct, consistent with the plans and purposes of KRS 76.010 to 76.210, and may take all steps the board deems proper and necessary to effect the purposes of KRS 76.010 to 76.210.

*514 (3) To construct any additions, betterments and extensions to the facilities of the district, within or without the district area, and to construct any construction subdistrict facilities or additions, betterments and extensions thereto, within or without the district area, by contract or under, through, or by means of its own officers, agents and employees. No construction or extensions shall be started within the city of the first or second class until, firstly, the city's director of works, and secondly, its board of aldermen have approved the plans. No construction or extensions shall be started in any city of the second, third, or fourth class until the governing authorities of such city or cities have approved the plans. No construction or extensions shall be started in any other part of the county until the plans have been approved, firstly, by the county engineer and, secondly, by the fiscal court.
(4) To establish, construct, operate, and maintain, as a part of the sewer and drainage system of the district, sewage treatment and disposal plants and systems and all the appurtenances and appliances thereunto belonging. The sewage treatment and disposal plants may be located in the city, or beyond the limits of the city in the county in which the city is located, as the board deems expedient.
(5) To acquire and hold the personal property the board deems necessary and proper for carrying out the corporate purposes of the district and to dispose of personal property when the district has no further need therefor.
(6) To acquire by purchase, gift, lease, or by condemnation, real property or any interest, right, easement, or privilege therein, as the board determines necessary, proper and convenient for the corporate purposes of the district, and to use the same so long as its corporate existence continues, and same is necessary or useful for the corporate purposes of the district. Condemnation proceedings may be instituted in the name of the district pursuant to a resolution of the board declaring the necessity for the taking, and the method of condemnation shall be the same as provided in the Eminent Domain Act of Kentucky. When the board by resolution declares that any real property which it has acquired, or any interest therein, is no longer necessary or useful for the corporate purposes of the district, the real property and interest therein may be disposed of.
(7) To make bylaws and agreements for the management and regulation of its affairs and for the regulation of the use of property under its control and for the establishment and collection of sewer rates, rentals and charges, which sewer rates, rentals and charges, applicable within the limits of a city of the first or second class, shall be subject to the approval, supervision and control of the legislative body of the city as hereinafter provided.
(8) To make contracts and execute all instruments necessary or convenient in the premises.
(9) To borrow money and to issue negotiable bonds and to provide for the rights of the holders thereof.
(10) To fix and collect sewer rates, rentals, and other charges, for services rendered by the facilities of the district, which sewer rates, rentals, and other charges, applicable within the limits of a city of the first or second class, shall be subject to the approval, supervision and control of the legislative body of such city as hereinafter provided.
(11) To enter on any lands, waters and premises for the purpose of making surveys, and soundings and examinations.

*515 (12) To approve or revise the plans and designs of all trunk, intercepting, connecting, lateral and outlet sewers, storm water drains, pumping and ventilating stations, disposal and treatment plants and works proposed to be constructed, altered or reconstructed by any other person or corporation, private or public, in the whole county, in order to insure that such proposed construction, alteration or reconstruction shall conform to and be a part of a comprehensive sewer and drainage system for the said county. No sewers, drains, pumping and ventilating stations, or disposal and treatment plants or works shall be constructed, altered or reconstructed without approval by the board of the district. Any such work shall be subject to inspection and supervision of the district.
Under the holding of Phelps, the MSD is not an agency of Louisville Metro, since Louisville Metro has no operational control over the MSD. Additionally, the MSD is financially independent. Simply put, as an independent municipal corporation, the MSD is not an agency of Louisville Metro within the meaning of KRS 65.003.
Finally, the parties agreed at oral argument that the MSD's board members, executive director, and chief engineer, as appointees of the Louisville Metro mayor, albeit appointed by the urban county government,[4] are not "appointed officials and employees ... of the urban-county ... government" within the meaning of KRS 65.003 (emphasis added). See also Phelps, 103 S.W.3d at 51 (fact that board members are appointed by mayor does not create agency relationship); Kea-Ham Contracting, Inc. v. Floyd County Dev. Auth., 37 S.W.3d 703, 706 (Ky.2000).
The Jefferson Circuit Court's judgment is affirmed.
ALL CONCUR.
NOTES
[1] Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.
[2] Gray died while this matter was pending.
[3] The events of Phelps occurred prior to the merger of the City of Louisville and Jefferson County.
[4] Under KRS 76.030(7) and KRS 67C.139, board members of the MSD are appointed by the mayor with approval of the Metro Council. See also Louisville, Ky., Code § 32.820(A). Under KRS 76.060(3), the MSD's "executive director, secretary-treasurer, and chief engineer shall be appointed by and serve at the pleasure of the mayor."