## George W. Katterjohn & Son v. Board of Education City of Paducah.

(Decided May 22, 1923.)

### Appeal from McCracken Circuit Court.

1. Schools and School Districts—Gymnasium Held Not to be Completed Within Time Required by Contract for Main Building.— Where the plans for a school building included a gymnasium as an annex to the main building, but the bids for the building with gymnasium exceeded the fund set apart for the building, and the board thereupon let the contract for the main building, with a provision that thereafter it might require the contractor to construct the gymnasium in accordance with the terms of his bid, and four months after the main contract was let the contractor was directed to proceed with the gymnasium, the provision in the original contract fixing the time for completion thereof did not apply to the completion of the gymnasium, even though the transaction be considered only a single contract, so that the contractor is not subject to the penalty imposed for failure to complete building within the time specified, where he had completed the main building before that time.

2. Schools and School Districts—Supplemental Contract Held Not to Entitle Contractor to Credit for Reduced Number of Brick Necessary.—Where bids for a school building were required to estimate the number of face brick necessary, and to be based on an estimate of $40.00 a thousand for the brick, which were to be later selected by the school board and the bid adjusted on the basis of the actual cost of the brick, a supplemental contract, whereby the board agreed to procure the face brick and the contractor to make deduction from the contract price in accordance with the bid and original agreement, entitled the board to deduct from the contract price the value of the number of brick estimated by the contractor at $40.00 a thousand, even though it developed that a smaller number of brick were necessary, the contractor not being entitled to the saving effected by the number of brick as excess profits.

3. Municipal Corporations—Can Exercise Only Powers Expressly Granted.—Municipal corporations and government agencies created by law to aid in municipal government have only such powers as are expressly granted to them, either in the Constitution or the statutory laws, and are subject to the express restriction of Constitution, section 162, that they cannot pay any claim under any agreement or contract made without express authority of law.

4. Schools and School districts—Board of Education has no Authority to Agree to Pay Contractor a Bonus for Completing Building Before Time Fixed.—Under Ky. Stats., sections 3235a1 to 3235a42, stating the powers of the board of education in cities of the second class, but not conferring any authority to give a bonus or

gratuity to a contractor for the speedy erection of any school building, a provision in the contract for the erection of a school building, giving the contractor a bonus of $100.00 for each day before the specified time that the building was completed, was void.

MIKE OLIVER for appellants.

MOCQUOT, BERRY & REED and REED & BURNS for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming on the original and reversing on the cross appeal.

In 1919 the voters of Paducah at an election held for that purpose authorized the issuing of two hundred and fifty thousand dollars in bonds for the construction and improvement of certain school buildings in that city.

Under the proposition as submitted one hundred and fifty thousand dollars of the bond issue was specifically set apart for the erection of the Augusta Tilghman High School building. The bonds were sold and this amount was so set apart.

The board of education had plans and specifications prepared for this building by architects, and bids were received for construction of the same under the terms thereof. There were also certain alternate propositions provided for in the plans and specifications and submitted to the bidders, and among them was one for the erection of a gymnasium in connection with the Tilghman High School building.

When the bids were submitted it was ascertained that appellants were the lowest bidders, but that the one hundred and fifty thousand dollar fund so set apart for that building would be insufficient to cover the cost of the erection of both the main building and the gymnasium attached thereto.

Accordingly, in the contract thereafter entered into the board of education accepted appellant's bid for the main building and it was provided that the bid for the construction of the gymnasium

"Shall be held in abeyance and left open by said contractor, and his bid for the construction of said gymnasium for said amount may be accepted by said board at any time between this date and April 1st, 1921, and in the event said board does decide to con-

struct said gymnasium the said contractor agrees to build same as per alternate number 11, and according to the plans and specifications.''

The original contract was dated December 30, 1920, and it was contemplated by the board that between that date and the 1st of April, 1921, a popular subscription would be taken up among the citizens of sufficient amount to authorize an acceptance of appellants' alternate bid for the erection of the gymnasium; and such subscription having been made, on the 31st of March, 1921, the board did accept appellants' bid for the erection of the gymnasium under the terms and specifications of their bid therefor.

This is an equitable action by the contractors against the board of education wherein it seeks a judgment against the board of $33,744.63, with interest from the 4th day of August, 1921, and that it be adjudged a lien upon the funds in the hands of the board specifically set apart for the payment of such construction. The amount so claimed is the aggregate of several different amounts claimed by the contractors growing out of different features of the work and different provisions of the contract, and of the plans and specifications.

The issues were made up in great detail about the various subdivisions of the work, and the pleadings are so voluminous it will be sufficient to say they presented all the issues.

After the taking of evidence and the filing of a great many exhibits, including the detailed plans and specifications under which the contract was made, the contract itself, and a supplemental contract entered into with reference to part of the brickwork, the cause was submitted and the court adjudged to the plaintiffs on account of the main building a balance of $26,753.97 with interest, and the sum of $6,419.79 with interest as the balance upon the contract price for the construction of the gymnasium.

In reaching this result it allowed the plaintiffs $4,100.00 for the completion of the main building forty-one days before the 15th of September, 1921, according to a provision of the contract, which item is vigorously contested by appellees; but it denied the claim of plaintiffs to an allowance of twenty-nine hundred dollars for twenty-nine days' delay alleged to have been caused by

the negligence of defendants and its employes, and denied a claim of plaintiffs for five hundred and ninety-seven dollars because of the falling of a basement wall alleged to have fallen because plaintiffs were required by the agent of appellees to improperly construct same in the first place. The court also disallowed a claim of the defendants of sixty-two hundred dollars as a penalty under the provisions of the contract for the plaintiffs' alleged failure to complete the building for sixty-two days after the fifteenth day of September, 1921, but on its claim of twenty-five hundred dollars for damages for defects there was allowed to the defendant one thousand dollars, and the balance disallowed. The court also in its judgment allowed defendants a credit for seventy-one hundred and sixty dollars for face brick purchased by it under the terms of a supplemental contract to be hereafter considered, and of that action appellants complain. The contractors are prosecuting this appeal, and the board of education is prosecuting a cross-appeal.

The only items seriously contested by appellants on this appeal are:

(a)    The court's refusal to allow them $597.00, the cost of the reconstruction of the fallen wall which they claim fell because appellees' agent required them to construct it in a faulty and improper manner in the first place;

(b)    Because of the court's refusal to allow them twenty-nine hundred dollars which they claim they would have earned under the terms of the contract by completing the building twenty-nine days earlier except for the failure of appellees' agents to furnish them in time certain detailed drawings about the stone work; and

(c)    Because the court allowed appellees a credit for seventy-one hundred and sixty dollars on account of the face brick under the terms of a supplemental contract.

The items contested by appellees are:

(a)    Allowance to the appellants of forty-one hundred dollars as a bonus for completing the main building forty-one days before the 15th of September, 1921;

(b)    Because of the court's refusal to allow appellees a credit for sixty-two hundred dollars because of the alleged failure of appellants to complete the buildings for sixty-two days after the 15th of September, 1921.

There are several small items on each side referred to by counsel in their briefs, but not insisted upon. The whole controversy revolves around the consideration of the above five items.

The court adjudged that the main building was completed on the 4th of August, 1921, but it seems to be conceded that the gymnasium was not completed until some time after the 15th of September, 1921. The appellees earnestly urge that there was in fact only one contract for the erection of both, and that as the gymnasium, which was a part of and connected with the main building, was not completed until sixty-two days after the 15th of September, 1921, they are entitled to have it adjudged that the plaintiffs thereby forfeited the sixty-two hundred dollars contracted for by them. But we are not inclined to give this harsh interpretation under the facts. While technically it was only one contract, the fact is that appellants only undertook to build the gymnasium according to the plans and specifications, three months or more after they had entered into the contract to build the main building. In the original contract appellants only agreed that they would thereafter build the gymnasium according to the plans and specifications if at any time before the 1st of April, 1921, appellees should accept their bid. In other words, on the 30th of December, 1920, the parties entered into a contract for the erection of the main building, and as a part of that contract they agreed they might enter into another contract within the specified time and upon certain terms for the erection of an adjunct to that building at the option of one of the parties. That party exercised that option and it thereby became a contract for the erection of the gymnasium, but because of the time that had elapsed it would be unfair and inequitable to read into it and make a part of it the agreement in the original contract with reference to the completion of the gymnasium. Under these circumstances the lower court properly treated them as two separate contracts, and this eliminates the claim of appellees for sixty-two hundred dollars because of the alleged failure to complete the building and gymnasium on or before the 15th of September.

Appellants' claim for twenty-nine hundred dollars because of alleged delay for twenty-nine days will necessarily be disposed of in our consideration of the allow-

ance by the lower court of forty-one hundred dollars to appellants because of the completion of the building forty-one days in advance of September 15.

Appellants' claim for five hundred and ninety-seven dollars because it was required. to 'reconstruct a wall which had fallen by reason of the requirement of appellees' agents, as alleged, in compelling them to construct it in a faulty manner in the first place, and their claim that the one thousand dollar credit allowed defendants to cover defects in the building was erroneous because of alleged defects in the plans and specifications must both be denied because the evidence as to each of them is not only conflicting but irreconcilable, and as to these items we have decided to accept the finding of the chancellor below.

That leaves for our consideration two questions: (1) Whether the court properly allowed appellees a credit for seventy-one hundred and sixty dollars because of the face brick, under the terms of the supplemental contract; and (2) should any allowance for a bonus have been given appellants even if the main building was finished forty-one days before the 15th of September.

(1) The bid of the contractors of $145,538.00 for the erection and completion of the main building, so far as the face brick necessary to complete the same was concerned, is based upon the following provisions of the plans and specifications:

"Sec. 4. FACE BRICK: The exposed exterior faces of exterior walls are to be built with first quality face brick, to be selected by the board.

"The bidder is to base his bid on a price of forty dollars ($40.00) per thousand, delivered to the building, for these face brick. Each bidder is to state (see blank on proposal sheet) how many of these face brick will be required to complete the building. The board reserves the right to settle with the contractor on the basis of any difference there may be between the forty dollars ($40.00) and the price of the brick which it selects."

Under these specifications the bid was necessarily, as required therein, based upon the face brick at the price of forty dollars per thousand; and as required by the specifications, appellants in their bid estimated it

would take one hundred and seventy-nine thousand face brick to erect and complete the building. It is therefore apparent that the total bid of $145,538.00 embraced an estimate by the bidder of $7,160.00 for face brick. That is to say, that if the face brick proposition had been eliminated entirely in the plans and specifications, and had not been estimated at all in appellants' bid, the sum would have been $7,160.00 less than the total of $145,538.00.

After the execution of the original contract a controversy arose between the board and the contractors over the meaning of the quoted clause in the specifications giving to the board the right to select the face brick, and in settlement of that controversy the parties entered into a supplemental contract providing as follows, to-wit:

"In view of the fact that some question has arisen in regard to who shall *order* the face brick for the Tilghman building, it is agreed that the board of education will order these brick and place them on the ground at building site, and in consideration of their doing so, the contractor will make deduction from the contract price for the construction of said Tilghman building, in accordance with the bid, original agreement, and the plans and specifications. . . . It is further agreed that the contractor will buy from the board of education any culls or broken brick rejected by the superintendent of construction at the rate of fifteen ($15.00) dollars per thousand."

In accordance with this supplemental contract the board proceeded to purchase and place on the ground at the building site one hundred and twenty-five thousand face brick at the price of forty dollars per thousand, the exact price upon which appellants' original bid had been based. Of this number only about one hundred and seventeen thousand were used in the construction of the building, and the board disposed of the remainder.

Appellants are vigorously protesting against the action of the trial court in deducting from the original contract price the $7,160.00 estimated therein as the price of the necessary face brick to erect and complete the building. This protest is based primarily upon the argu-

ment that the price of the face brick actually purchased by the board and placed upon the building site was $2,524.00 less than the estimate upon which appellants' bid was based, and thereby enabled the board to get the building constructed for that much less than they agreed to pay appellants therefor.

Appellants' argument when analyzed is that they are entitled to a profit of $2,524.00 on the purchase of the face brick by the board after the execution of the supplemental contract turning over to the board the whole face brick proposition, and wherein the contractors had agreed to "make deduction from the contract price for the construction of said Tilghman building, in accordance with the bid, original agreement, and the plans and specifications;" that is, that because the board in the exercise of a sound judgment after the face brick proposition had been wholly turned over to it, only bought one hundred and twenty-five thousand of such brick, which were in fact an ample number, that appellants, who had erroniously estimated it would take one hundred and seventy-nine thousand face brick, were entitled as a profit, to the price of the fifty-four thousand brick which they had erroneously estimated would be necessary to complete the building.

But suppose under the terms of this supplemental agreement it had been necessary for the board to buy and place upon the building site a greater number of face brick than one hundred and seventy-nine thousand in order to complete the building, and in consequence thereof the cost of same would have been greater than that estimated by appellants in their bid, could it be seriously contended after the whole face brick proposition had been turned over to the board the contractors would have been liable for this excess cost?

Our interpretation of the supplemental contract is that the whole question as to purchasing, selecting and placing on the ground the face brick was thereby turned over to the board and appellants were not only relieved of the obligation to purchase and place them on the ground, but were further relieved of the obligation which might rest upon them to purchase a greater number than one hundred and seventy-nine thousand of such brick if their estimate should turn out to be too low. At the

same time the board, by the terms of the supplemental contract, assumed the responsibility of selecting and paying for and delivering to the site whatever face brick might be necessary to complete the building, whether the number be greater or less than one hundred and seventy-nine thousand.

The terms of the supplemental contract are plain, unambiguous and aptly expressed. In unmistakable language it provides that the board shall order and place on the ground at the building site the face brick—an obligation theretofore resting upon appellants—and in consideration of that agreement appellants agree to "make deduction from the contract price for the construction of said Tilghman building, in accordance with the bid, original agreement, and the plans and specifications."

The specifications require appellants to base their bid on face brick to cost forty dollars per thousand, and they require the contractors to estimate in their bid how many of such face brick would be necessary; appellants in compliance with those specifications estimated it would take one hundred and seventy-nine thousand face brick, and that number of face brick at forty dollars per thousand would cost $7,160.00, and when they agreed in the supplemental contract to deduct from the contract price of the main building they necessarily agreed to deduct therefrom the $7,160.00, no more and no less.

Suppose the whole face brick proposition had been eliminated in the original plans and specifications, the original bid, and the original contract, can it be doubted that appellants' original bid would have been $7,160.00 less than it was?

We must therefore decline to reverse the judgment on account of the action of the trial court as to this item.

(2)   In the contract of December 30, 1920, for the erection of the main building, the contractors agreed to complete that building in strict accordance with the plans and specifications on or before September 15, 1921; and thereafter in the contract the board of education agreed to pay to the contractors the sum of one hundred dollars per day for each and every day said building was completed and ready for use and occupancy before the 15th day of September, 1921.

The validity of this last provision, and the power of the board to make same, are earnestly called in question on the cross-appeal.

It is fundamental and almost without exception that municipal corporations and governmental agencies created by law to aid in municipal government have only such powers as are expressly granted to them either in the Constitution or the statutory laws. Embraced within the scope of this general rule is the additional one that neither public nor quasi-public corporations may pay out public moneys or contract to pay out same without express authority of law.

In this state these general principles of law designed to protect the public from the unauthorized use of public moneys have been clearly and comprehensively stated and laid down by an express constitutional provision that

"No county, city, town or other municipality shall ever be authorized or permitted to pay any claim created against it, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void." (Kentucky Constitution, section 162.)

Section 3235a, Kentucky Statutes, is a part of the charter for cities of the second class in this state. That section creates the board of education in such cities and makes such board a body corporate and fully and comprehensively states the powers of the board. It authorizes the board to make contracts for the erection of school buildings and additions thereto, and confers upon it many other powers; but there is nowhere conferred, or attempted to be conferred, any authority to give a bonus or any gratuity to a contractor for the speedy erection of any school building, or its erection before any specified time.

It is unnecessary for the purposes of this case to determine whether if such express authority was given it would be contrary to the provisions of section 162 of the Constitution; it is sufficient in this case to say that there was no authority of law for the undertaking by the board to pay this bonus or gratuity, and there being none, the provision in the contract was beyond the power

of the board and necessarily unenforceable. The facts of this case strikingly illustrate the wisdom of the rule of law that public moneys are not to be paid out by public corporations or quasi-public corporations without express authority of law. The contract in this case was executed on the 30th of December, 1920, and the contractors agreed therein to complete the building eight and one-half months thereafter. Their bid was accepted for the amount which they themselves estimated would be a fair and reasonable compensation to them and bring them a reasonable profit. It is conceivable, even though this was a large building, that by energy and the use of extra shifts of labor the building might have been completed by the 1st of May or the 1st of June. If, then, this bonus provision is enforceable against this board, in addition to the fair profit made by the contractor on his original bid, he might have made from ten to thirteen thousand dollars more.

Not only so, if it was in the power of such a board in handling public moneys to contract for a bonus or gratuity of one hundred dollars a day, it also had the power to contract for a bonus of one thousand dollars or more a day. Manifestly, such authority would enable a corrupt or improvident board by collusion with a thrifty contractor to quickly consume and dissipate educational funds.

We have had no great difficulty in reaching the conclusion that the board, in the absence of express legislative authority, exceeded its powers in contracting to pay this bonus, and therefore same is wholly unenforceable. Board of Education v. Scott, 189 Ky. 225.

The judgment is affirmed on the original appeal and for the one reason stated is reversed on the cross-appeal with directions to enter a judgment as herein indicated.