**TRANSIT AUTHORITY OF LEXING-TON-FAYETTE URBAN COUNTY GOVERNMENT, Movant/Appellant,**

v.

**AMALGAMATED TRANSIT UNION, LO-CAL 639, By and Through its President, Kenneth DICKERSON, who brings this action on behalf of himself and all other members of said Union, Movant/Appellee.**

Supreme Court of Kentucky.

Sept. 5, 1985.

Rehearing Denied Nov. 21, 1985.

Robert F. Houlihan, Donald P. Wagner, Mary Beth Griffith, Stoll, Keenon & Park, Lexington, for movant/appellant.

Arthur Brooks, Brooks, Kauffman & Fitzpatrick, Lexington, Joseph J. Pass, Jr.,

Jubelirer, Pass & Intrieri, P.C., Pittsburg, Pa., for movant/appellee.

David L. Gittleman, Gittleman & Barber, D. Patton Pelfrey, Charles E. Allen, III, Kenneth E. Lauter, Brown, Todd & Heyburn, Louisville, for amicus curiae Transit Authority of River City.

David A. Schneider, Ziegler & Schneider, PSC, Covington, for amicus curiae, Transit Authority of Northern Kentucky.

VANCE, Justice.

The question is whether or not a clause in a collective bargaining agreement entered into between the Transit Authority of Lexington-Fayette Urban County Government and Amalgamated Transit Union, Local 639, which provides for binding interest arbitration is enforceable. Fayette Circuit Court held the contract enforceable and, upon motion, the appeal from the judgment was transferred to this court. We reverse the judgment.

The Transit Authority provides a variety of transportation services to the public, including local bus service. It was created pursuant to the provisions of Chapter 96A, of the Kentucky Revised Statutes. The Transit Authority entered into a collective bargaining agreement with the union which contained the following provision:

"This Agreement shall be in full force and effective from April 1, 1982 to March 31, 1984, both dates inclusive, and from year to year thereafter unless changed or terminated as herein provided. Either party desiring to negotiate any changes or modifications to become effective at the end of the initial term or any extension thereof, or desiring to terminate this Agreement, shall notify the other party in writing of its desire, not less than sixty (60) days prior to the expiration date of the initial term, or any extension thereof. If such notice is given by either party, it shall also contain an offer to meet and confer with the other party for the purpose of negotiating a new Agreement. In the event the parties cannot reach an agreement on any said proposed changes or modifications, *then such pro-posed changes or modifications as either party may desire to have arbitrated, shall be arbitrated* as provided in ARTICLE 10 in this Agreement." (Emphasis added.)

Prior to March 31, 1984, the Transit Authority and the Union commenced negotiations for a new collective bargaining agreement without success. On March 28, 1984, the union invoked the arbitration clause set out above in an effort to submit to arbitration all of the terms to be included in a new collective bargaining agreement. The Transit Authority declined to submit the issue to arbitration upon the ground that it, as a municipal corporation, could not delegate its authority to determine policy and to fix wages and salaries to an arbitrator.

Section 162 of the Kentucky Constitution provides:

"No county, city, town or other municipality shall ever be authorized or permitted to pay any claim created against it, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void."

In *City of Covington v. Covington Lodge # 1, Fraternal Order of Police*, Ky., 622 S.W.2d 221 (1981), we held invalid a clause in a contract entered into by the City of Covington and the Lodge, which represented members of the police department, which provided for binding arbitration in the event the parties could not agree upon the terms of a new contract. This holding was premised upon the proposition that the City Council, by statute, was given control of the police department and could not delegate its authority to determine such matters as wages, bonuses, vacations, seniority, overtime, supplemental pay, and like matters to an arbitrator. The opinion in *City of Covington* expressly declined to consider the impact of Section 162 of the Constitution.

*City of Covington* deals with a unit of government which, without question, is a municipality, a city government with a legislative council. It is contended by the

appellee that the Transit Authority is not such a municipality, that it has no legislative authority, and that it is more in the nature of a private corporation.

The real question to be decided here is whether the Transit Authority falls within the classification of a municipal corporation whose policy-making function cannot be delegated.

K.R.S. 96A.020 provides that a transit authority shall constitute an agency and instrumentality for accomplishing essential governmental functions of the public body or public bodies creating and establishing the same, and shall be a political subdivision and a public body corporate.

K.R.S. 96A.040 provides that the activities and affairs of a transit authority shall be managed, controlled, and conducted by a board to be appointed as prescribed by statute.

K.R.S. 96A.070(6) provides that the board shall fix the salaries, wages, or other compensation of the affairs, agents, and employees of the transit authority.

This court has heretofore classified agencies of government similar in nature to the Transit Authority as municipalities so as to limit the power of the governing body to delegate its powers.

In *George W. Katterjohn & Son v. Board of Education*, 202 Ky. 690, 261 S.W. 257 (1923), a school board was held to be a municipal corporation without power to pay a bonus to a contractor for the early completion of a building.

"It is fundamental and almost without exception that municipal corporations and governmental agencies created by law to aid in municipal government have only such powers as are expressly granted to them either in the Constitution or the statutory laws. Embraced within the scope of this general rule is the additional one that neither public nor quasi public corporations may pay out public moneys or contract to pay out the same without express authority of law.

"In this state these general principles of law designed to protect the public

from the unauthorized use of public moneys has been clearly and comprehensively stated and laid down by an express constitutional provision that—

'No county, city, town or other municipality shall ever be authorized or permitted to pay any claim created against it, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void.' Kentucky Constitution, § 162."

*Id.* at 260.

In *Board of Park Commissioners of Ashland v. Shanklin*, 304 Ky. 43, 199 S.W.2d 721 (1947), we held that the maintenance of parks by a municipality is a governmental function and that a Board of Park Commissioners created by statute to have the care, management, and custody of the parks and grounds used for park purposes was without authority to enter into a lease which would surrender its sole and exclusive control of the management of a part of the public property under its jurisdiction. We said:

"The grant of public power and right imposes a corresponding public duty and responsibility. Official dominion and discretion may not be surrendered, nor public functions delegated, in whole or in part, to another person who is not answerable to the people. There is an implication not only of the withholding but of the prohibition of the exercise of other authority not necessary to the performance of that which is expressly given. Of such is the shifting or sharing of the powers granted or duties imposed. *Booth v. City of Owensboro*, 274 Ky. 325, 118 S.W.2d 684."

*Id.* at pp. 723–724.

In *Rash v. Louisville & Jefferson County Metropolitan Sewer District*, 309 Ky. 442, 217 S.W.2d 232 (1949), we held a sewer district created under statutory authority to be a municipality:

"This act deals with distinct municipal corporations. When the Metropolitan Sewer District was established under the

enabling statute, Chapter 76, Kentucky Revised Statutes, it became an independent body politic charged with administration of designated affairs. It was created by the sovereign power of the state as 'a public body corporate, and political subdivision'. K.R.S. 76.010. The statute constitutes its charter. It exercises delegated powers of government which vitally affect the public health of the entire county. The Constitution in several sections recognizes the existence, present and future, of a municipal corporation other than a county, city, town or taxing district. Sections 157, 158, 159, 161, 164, 165, 180, 181. The Metropolitan District is a separate entity acting for its own purposes and possessing defined, though limited, powers of a municipal community. It meets the conventional descriptions or definitions of a 'municipality.' McQuillin, Municipal Corporations, Sections 126, 128; *City of Covington v. District of Highlands*, 113 Ky. 612, 68 S.W. 669; *Gleason v. Weber*, 155 Ky. 431, 159 S.W. 976; *Board of Trustees of Policemen's Pension Fund v. Schupp*, 223 Ky. 269, 3 S.W.2d 606. Obviously nothing need be said concerning the character of the City of Louisville."

*Id.* at p. 236.

In *Louisville Extension Water District v. Diehl Pump and Supply Co.*, Ky., 246 S.W.2d 585 (1952), a water district was created under a statute which provided, as the statute provides in this case, that the water district commission shall be a body corporate for all purposes. We held that the district was a political subdivision and that in the execution of contracts with third parties it must observe the same formalities required of counties and municipalities.

It seems clear that the Transit Authority is a creature of statute whose purpose is to accomplish statutorily designated essential governmental functions for the Lexington-Fayette Urban County Government.

By statute its governing board is vested with management and control, and by statute the board is specifically charged with the responsibility to fix salaries and wages.

The collective bargaining agreement covers a broad range of matters similar to those enumerated in *City of Covington v. Covington Lodge No. 1, supra,* including the fixing of wages, bonuses, vacations, insurance, holidays, leaves of absence, shift differentials, overtime, and supplemental pay, seniority, etc. It deals with the entire spectrum of matters which call for the exercise of discretion and judgment by the members of the board.

■ The Transit Authority is charged with the performance of a public purpose. It is an agency of government, a political subdivision, and its governing board has a responsibility to the public to faithfully discharge its duties relating to the control and management of the Authority.

Because these duties are specifically imposed by statute upon board members, and because they, and they alone, are charged with the control and management of the Transit Authority, we hold that their exercise of discretion in policy matters and management decisions cannot be delegated to an arbitrator. The issues covered by the collective bargaining agreement, for the most part, call for the exercise of discretion and judgment, and therefore involve policy and management decisions.

■ Having decided that the Board of the Transit Authority cannot constitutionally delegate to an arbitrator its responsibility to fix wages, determine policy, or make decisions which are the prerogative of management, it necessarily follows that any contractual agreement to do so in the collective bargaining agreement with the union, or in an agreement with any federal agency whereby it received federal grants, is invalid.

■ Appellee argues, in the alternative, that even if a submission to arbitration would constitute a delegation of authority, the delegation must be held to be permissible because it is one of clear necessity. We are unpersuaded by the briefs and arguments advanced by the parties that any circumstances exist in this case to warrant

a delegation of powers because of a clear necessity.

▮ Although K.R.S. 96A.200 requires a transit authority to assume and observe all existing labor contracts and pension obligations of any existing transit system acquired by it, we do not construe this to mean that constitutionally invalid provisions of any such labor contracts or pension systems must be assumed and observed, nor do we construe this section to constitute legislative authority for transit authority boards to delegate their management prerogatives to an arbitrator.

The judgment is reversed.

AKER, GANT, STEPHENSON, and VANCE, JJ., concur.

STEPHENS, C.J., not sitting.

LEIBSON and WINTERSHEIMER, JJ., dissent by separate opinions.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the original collective bargaining contract requires that the parties submit their unresolved disputes to binding arbitration. The Authority is estopped to escape its responsibility under the contract because it does not come within the classification of a municipal corporation whose policy-making function cannot be delegated.

The Authority and the Union have been parties to successive collective bargaining contracts since the Authority acquired the existing system in 1973. At that time, the Union was the representative for purposes of collective bargaining of the employees and the Authority adopted the existing agreement pursuant to KRS 96A.200. The present agreement was effective from April 1, 1982 to March 31, 1984. When the parties were unable to reach a new agreement the Union invoked the arbitration clause. The Authority originally agreed to proceed to arbitration but later withdrew that agreement.

The Authority is also a signatory to an agreement pursuant to Section 13(c) of the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1609(c). Section 13(c) requires a local government to make arrangements to preserve transit workers' existing rights before that governmental unit may receive any federal money under the act. The Authority entered into an agreement under which it agreed to submit to binding arbitration, any labor dispute.

I believe the circuit court correctly determined that the contract to arbitrate the dispute over the terms and conditions of a new contract did not violate the Kentucky Constitution. The Authority has the power and duty to submit to binding arbitration and to do so does not violate the Kentucky Constitution in any respect.

Submission to binding arbitration is not a delegation of its powers of the type found unconstitutional in *City of Covington v. Covington Lodge No. 1, Fraternal Order of Police*, Ky., 622 S.W.2d 221 (1981). That case is clearly distinguishable from the facts of this matter.

The only similarity is the provision for binding arbitration in each agreement. In contrast to this case, the parties to the collective bargaining agreement in *City of Covington, supra*, were the city and the police department. The contract was authorized by an ordinance adopted by the city commission and the control of the police department is expressly vested in the legislative body of a city of the second class. KRS 95.430(1).

In that case, this Court held that the city commission was elected by the people to have charge of the affairs of the city, and the legislature specifically placed control of the police in the city commission. There is no such statutory restriction in this case. Here the legislature gave the Authority broad powers to exercise generally all the powers of a private corporation. *See* KRS 96A.020.

Where the General Assembly intended to restrict the powers of transit authorities, it did so specifically. KRS 96A.090 provides that no transit authority shall have any

power to levy taxes of any nature or in any amount.

When the *City of Covington, supra,* and this case are considered in the context of the separate enabling legislation for police departments and transit authorities, there is no doubt that the Authority here has both the power to comply with the arbitration agreement. The sole authority for managing the affairs of the municipal police department is vested in the elected legislative body of the municipality. KRS 95.430(1). Transit authorities have the express power to delegate the operation of the transit system by entering into management contracts under such terms and conditions as it may determine to be proper and desirable. KRS 96A.100. It can be argued that the entering of a collective bargaining agreement, whereby the Authority agrees to allow an arbitration panel to set wages, hours and working conditions is a management contract.

The fundamental difference between the exercise of the power to submit to binding arbitration by a police department and a transit authority is the distinction between the two bodies. The police department is a creature of the elected representatives of the residents of the city. The authority is a separate entity, a political subdivision, with no elected members.

The most compelling evidence of the obligation of the Authority to comply with the binding arbitration provision of the agreement is the fact that the General Assembly has imposed an affirmative duty on those authorities which acquire existing transit facilities to assume and observe all existing labor contracts and pension obligations. KRS 96A.200. This Authority acquired the existing transit system in 1973, and there was a labor agreement in existence which contained the same arbitration section as is found in Section 50 of the present contract. That provision has been renewed in each successive collective bargaining contract between the parties up to and including the most recent agreement. The refusal of the Authority to comply with the labor contract is a violation both of the contract and of the statute.

In *City of Covington,* this Court found that the arbitration clause was a delegation of the city's legislative control over the police department and therefore, is illegal. This Court then limited its holding to that particular case only and specifically reserved the question of the legality of arbitration agreements to. settle future disputes.

The statutes which created the Authority do not vest it with the powers of a legislative body. This Court clearly noted what is essential in determining what is a legislative body. If there is one essential characteristic inherent in legislative power, it is that such power must be exercised by an elected representative or representatives of the people and not by a person, persons or agencies created or designed by those representatives. *Miller v. Covington Development Authority et al.,* Ky., 539 S.W.2d 1 at 4 (1976).

The Authority was created to carry out an already established goal, that of operating a mass transportation system. The Authority has the power of a *private* corporation. KRS 96A.020. A private corporation lacks legislative power. It follows that a private corporation can enter a contract agreeing to binding arbitration.

Certainly the Authority can establish wages as set out in KRS 96A.070(6). A private corporation also sets wages. The statute also permits the broad latitude in how those wages are arrived at so long as the taxing body, the city or the county, does not incur any obligation. The language of the statute prohibits a non-legislative body, the Authority, from incurring any debt or obligation for the legislative taxing body. The statute allows the Authority to set wages by entering collective bargaining agreement or any agreement which it chooses in order to establish wages. The Authority's board has determined that wages can best be set by collective bargaining.

Submission to arbitration does not constitute a delegation of legislative power be-

cause the Authority has no such legislative power. It cannot delegate what it does not have. *See City of Newport v. Gugel,* Ky., 342 S.W.2d 517 (1960); *also Miller v. Covington, supra.* The Authority cannot prescribe a new policy. It can and is required, however, to pursue a plan already adopted by the legislative body. The legislature has adopted a clear policy of requiring municipal transit authorities to abide by collective bargaining agreements.

Delegations of responsibility involving a great amount of discretion have long been recognized as appropriate in Kentucky. *See Settle v. Jones,* 306 Ky. 9, 206 S.W.2d 59 (1947). In that case the statute in question authorized any city of the third class to operate its combined utilities through a board appointed by the chief executive of the governing body of the municipality. The statute fixed the salary of each member and the superintendent to be employed by the board. This Court held that the statute did not confer legislative power on the board in conflict with Section 160 of the Kentucky Constitution. The board's powers were found to be comparable to those of the bridge commission which was found constitutional in *Klein v. City of Louisville,* 224 Ky. 624, 6 S.W.2d 1104 (1928). *Klein, supra,* held that the commission functioned as an administrative body to carry out the legislative intent and in so doing, it necessarily was vested with discretion.

The Authority in this case is functioning in the same way as those commissions. The General Assembly intended that employees' rights under existing collective bargaining contracts be preserved and carry out that intent, mandated that the Authority adopt and adhere to those agreements. The Authority cannot carry out the legislative intent of the statute unless it complies with the binding arbitration provision of this agreement.

The intent of the General Assembly was to resolve disputes quickly by those with an in-depth knowledge of the subject matter of the dispute. The goal of the legislature was the same when it instructed transit authorities to adopt existing agreements to resolve disputes between the Authority and its employees quickly and with a minimum of disruption of transit service to the public. A decision of an arbitration panel familiar with the resolution of labor/management disputes would meet that legislative aim.

The arbitration of labor disputes falls within the purview of the doctrine of clear necessity as set out in *Administrative Law Treatise,* Vol. 1, pages 148–149, by Kenneth Culp Davis and quoted in *Butler v. United Cerebral Palsy of Northern Kentucky, Inc.,* Ky., 352 S.W.2d 203 (1961). Here the Authority cannot effectively handle the dispute because the parties are at an impass in their negotiations. The alternatives to arbitration are an extended labor dispute, possibly resulting in an unfortunate disruption of mass transit service to the members of the public and the destruction of collective bargaining rights by the employees of the system. Either of these results are against public policy as set out by the General Assembly in the Kentucky Transit Authority Act.

The arbitration of this dispute by a fair and impartial arbitrator, mutually selected by the parties, would achieve the legislative goals of uninterrupted transit service and the preservation of employee rights. Labor arbitration has long been recognized as the most effective means to end such disputes. Submitting the controversy to an experienced arbitrator provides a guarantee of an equitable, well-reasoned resolution of the dispute.

I would affirm the circuit court.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The first question is whether the Transit Authority of Lexington-Fayette Urban County Government should be classified as a municipality as that term is used in Section 162 of the Kentucky Constitution. That Section forbids any "county, city, town or other municipality" from entering agreements or contracts which commit to

binding arbitration. The legislative body of such municipality cannot delegate its decision making power. But we should not designate every public agency as qualifying under the term "municipality." The enabling legislation under which the Transit Authority was created empowered the Lexington-Fayette Urban County Government to create what was essentially a corporation to take over from the private transit system, assuming its obligations, exercising "all of the powers of private corporations" (KRS 96A.020), and assuming the duty to "observe all existing labor contracts and pension obligations" (KRS 96A.200). In short, this public agency, as created, was to function in a manner distinct and different from that of a "county, city, town or other municipality." Ky. Const., § 162. The most important difference was that as created it had no power to tax. KRS 96A.090(1). It operates independently (KRS 96A.100) and it is self-financing (KRS 96A.120). The local government *"may"* contribute to its support, but there is no requirement that it do so. KRS 96A.090(2). (Emphasis added.)

The restrictions of Kentucky Constitution § 162 are intended for legislative bodies with power to raise and spend public funds. The agency under consideration functioned not as a municipality, but more or less as the privately owned transportation corporation which it replaces. Formerly, Lexington-Fayette Urban County Government could franchise or contract with a private transportation company to perform the service. That corporation could then contract with a union to arbitrate the wage scale. The contract now under consideration was exercised with full statutory power, and there is no reason, constitutional or otherwise, why the contract should not be honored.

Furthermore, the form in which the statutory authorization was structured was adopted in order to comply with the requirements of the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1601 et seq. (hereinafter "UMTA.") As stated in *Jackson Transit Auth. v. Local Div. 1285,* 457 U.S. 15, 17, 102 S.Ct. 2202, 2204, 72 L.Ed.2d 639, 642 (1982):

"The Act [UMTA] was designed in part to provide federal aid for local governments in acquiring failing private transit companies, so that communities could continue to receive the benefits of mass transportation despite the collapse of the private operations."

The Transit Authority was signatory to an agreement entered into as required by § 13(c) of the UMTA, as amended, 49 U.S.C. § 1609(c) (hereinafter "13(c) agreement"). Subsection 13(c) requires a state or local government to make arrangements to preserve transit workers' existing rights before that government may receive any federal money under the Act. The agreement which we now declare void is a continuation of agreement to submit to binding arbitration which was an obligation freely accepted by the state of Kentucky in order to obtain federal funds. Federal funds were available only on condition that the Transit Authority created was prepared to take over the existing bus service contract. The Transit Authority took over the contract providing for interest arbitration and then renewed that contract. The state of Kentucky should honor the obligations it has assumed in order to obtain federal funds. To do otherwise may well result in a subsequent determination that we have misused federal funds. See *Bennett, Sec. of Ed. v. Kentucky Dept. of Ed.,* —— U.S. ——, 105 S.Ct. 1544, 84 L.Ed.2d 590 (1985).

More importantly, it is a foremost obligation of government to honor its obligations. Having assumed the obligation to enter into binding interest arbitration pursuant to the powers granted to the Transit Authority in the enabling legislation, and in conformity with what was necessary to obtain funds under the UMTA, there is no justification, constitutional or by case law, for us to permit the Transit Authority to break its contract.