The Honorable Robert Herzfeld Prosecuting Attorney 22nd Judicial District Benton, AR 72015
Dear Mr. Herzfeld:
I am writing in response to your request for my official opinion on the following two questions:
 1. Is it legal, ethical, and appropriate for governmental entities to spend taxpayer dollars in support of or in opposition to a ballot measure on public policy grounds?
 2. What are the legal and ethical reporting requirements, if any, of any governmental entity which is not a "state agency, board, or commission" (i.e., a county office or judicial district office) which expends funds in support of or in opposition to a ballot measure.
RESPONSE
Question 1: Is it legal, ethical, and appropriate for governmentalentities to spend taxpayer dollars in support of or in opposition to aballot measure on public policy grounds?
I am enclosing for your information Ark. Ops. Att'y Gen. Nos. 98-204, 2000-162 and 2001-031, which discuss in detail a governmental entity's authority to expend public funds to espouse particular positions. Without repeating my predecessors' analyses, with which I fully concur, I will offer the following excerpt from the most recent of these opinions, which I believe addresses your question directly:
 I assume your concern is that the city might be restricted from engaging in what the courts generally refer to as" government speech" — i.e., speech that clearly advocates a particular position on a matter of public debate. My immediate predecessor and I have previously addressed this issue in the enclosed Ark. Ops. Att'y Gen. Nos. 98-204
and 2000-162. As reflected in these opinions, the propriety of government speech normally becomes an issue in the context of election campaigns, in which the government is largely precluded from espousing partisan positions. However, the Supreme Court has recognized that government will necessarily commit itself to certain positions in the course of fulfilling its functions. As one commentator has noted: "Unless government is taking a position with respect to religion, where the special strictures of the establishment clause come into play, courts consider government communication to be a function of the state that is not contained by the limitation of the first amendment." F. Schauer, Is Government Speech a Problem?, 35 Stan. Law Rev. 373, 376 (1983). The Supreme Court has analyzed this issue as follows:
 Government officials are expected as a part of the democratic process to represent and to espouse the views of a majority of their constituents. With countless advocates outside of the government seeking to influence its policy, it would be ironic if those charged with making governmental decisions were not free to speak themselves in the process.
 Keller v. State Bar of California, 496 U.S. 1, 12 (1990). The Court has recently stressed that government speech is most often a matter of merely political, as opposed to constitutional, concern:
 When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position.
 Board of Regents of University of Wisconsin System v. Southworth, 529 U.S. 217, 234 (2000).
 I recognize that there is a certain tension between, on the one hand, the notion that government must adopt and promote positions in order to function and, on the other, the idea that it must avoid being tendentious in addressing ballot initiatives and referenda. Without presuming to resolve this tension, I will simply note that the Supreme Court has been particularly jealous in guarding the public's right to disinterested government information on matters scheduled for an impending public vote, see enclosed Ark. Ops. Att'y Gen. Nos. 98-204
and 2000-162, while at the same time recognizing that a government by definition must pursue an agenda that will inevitably carry some political charge. The Court has made clear that it will not brook any governmental use of taxpayer funds to present the public with "information" that amounts to no more than arguments supporting only one side of a ballot initiative or referendum. However, this is not to say that the government must be neutral on issues of public concern. It is in the very nature of a political administration to take and advance positions, and doing so will necessarily entail attempting to influence legislation.
 Finally, I should note the possible application of the "public purpose" doctrine, which my predecessor discussed as follows in Ark. Op. Att'y Gen. No. 91-410:
 [Th]e broad, but often difficult to define "public purpose" doctrine . . . generally requires that the expenditure of public funds be for a "public purpose." See generally Chandler v. Board of Trustees of the Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 497 (1963), and cf. specifically South Carolina Op. Att'y. Gen. issued April 24, 1987. It has been stated as regards this doctrine that "[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public." McQuillin, Municipal Corporations, § 12, 190. The determination of whether a particular expenditure is for a "public purpose" is to be made by the legislature. Although ultimately the propriety of a particular expenditure is resolved by the judiciary, great weight must be given legislative declarations of public purposes. Turner v. Woodruff, 286 Ark. 66, 698 S.W.2d 527 (1985).
As the foregoing reflects, it is difficult to formulate any black-letter rule regarding a governmental entity's authority to expend public funds in a manner that amounts to support of a particular position on a ballot measure. On the one hand, the government is in the business of advancing what it perceives as public policy priorities, and its wisdom in doing so is always subject to political accountability. On the other, it is obliged to avoid expending public funds in connection with an election in a manner that a court might characterize as being overtly partisan, as opposed to "informational." In matters relating to ballot measures, the government's actions cannot amount to the suppression or the distortion of information germane to the public's decision making.
With respect to the issue of public financing of such government speech, the issue is whether individual citizens can in effect be compelled to subsidize the advancement of positions with which they disagree. In my opinion, the answer to this question is "yes," so long as the government speech is sufficiently dispassionate to qualify as a proper exercise of governmental activities. See Keller v. State Bar of California,496 U.S. 1, 13-14 (1990) (holding that a lawyer could be compelled to support the ideological activities of a state-mandated bar association so long as those activities were "germane" to maintaining the quality of legal services). In response to your specific question, then, I believe it might under certain circumstances be "legal, ethical, and appropriate" for a government entity to expend public funds in a way that might reasonably be interpreted as supporting or opposing a ballot measure. However, as my predecessors pointed out in the above referenced opinions, the inquiry into whether the government has impermissibly entered into the realm of partisan campaigning will always be intensely factual. It is difficult to say more than that the courts have traditionally looked askance on government speech relating to electoral issues.
Question 2: What are the legal and ethical reporting requirements, ifany, of any governmental entity which is not a "state agency, board, orcommission" (i.e., a county office or judicial district office) whichexpends funds in support of or in opposition to a ballot measure.
In my opinion, a governmental entity other than a "state agency, board, or commission" is required to report to the Arkansas Ethics Commission its expenditures in support of any "legislative question" — i.e., "a question in the form of a measure referred by the General Assembly, a quorum court, a municipality, or a school district to a popular vote at an election," A.C.A § 7-9-402(6) (Supp. 2003), or in support of any "ballot question" — i.e., "a question in the form of a statewide, county, municipal, or school district initiative or referendum which is submitted or intended to be submitted to a popular vote at an election whether or not it qualifies for the ballot." A.C.A § 7-9-402(1). Subsections 7-9-402(7) and -402(8)(B) of the Code include within the category of "person" comprising a "legislative question committee" or "ballot question committee" subject to a disclosure requirement "a public servant or governmental body using public funds to expressly advocate the qualification, passage, or defeat of any ballot question or the passage or defeat of any legislative question." Section 7-9-406 provides that any expenditure in excess of $500 must be reported. Section 7-9-407 specifies what information must be disclosed.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures