The Honorable Johnny Key State Representative 1105 Delwood Lane Mountain Home, AR 72653-5601
Dear Representative Key:
I am writing in response to your request for my opinion on the following question:
 Is it lawful for a volunteer fire department to make a contribution to a political campaign?
RESPONSE
In my opinion, with respect to volunteer fire departments that are not organized as private, nonprofit corporations, I believe the clear answer to this question is "no." With respect to private, nonprofit fire departments, I believe the answer is likewise "no" to the extent that the contribution would come from public funds. Only a finder of fact familiar with the corporation's charter documents could determine whether a private, nonprofit fire department could expend privately raised revenues for partisan purposes. However, although answering your question would ultimately entail undertaking a factual inquiry of the sort I am neither equipped nor authorized to conduct, as a general proposition, I do not believe making political contributions falls within the scope of a volunteer fire department's duties.
As reflected in my summary response above, your question is more complicated than its brevity might suggest. I would be better able to address your question if I knew what variety of "volunteer fire department" is at issue. As discussed immediately below, the term "volunteer fire department" covers a whole range of organizations, not all of which might be classified as "public" in a sense that would enable me simply to inquire whether "public" funds might permissibly be contributed to a political campaign.
I must initially address what the term "volunteer fire department" means. As one of my predecessors noted in Ark. Op. Att'y Gen. No.96-114, at n. 2:
 Under Arkansas law, what is referred to as a "volunteer fire department" may take one of any number of legal forms. Such departments may be incorporated as purely private nonprofit corporations collecting dues or membership fees [see A.C.A. §§ 4-28-201 et seq., the Arkansas Nonprofit Corporation Act, or 4-33-101 et seq., the Arkansas Nonprofit Corporation Act of 1993]; as fire protection districts under A.C.A. § 14-284-101 et seq. or 14-284-201 et seq., or suburban fire improvement districts under A.C.A. § 14-92-201 et seq., all of which assess local benefits to be collected with ad valorem taxes; as a county "volunteer fire department" under A.C.A. § 14-20-108(c) or as a county created subordinate service district under A.C.A. §§ 14-14-708 and -709 (1987). In addition, although the statutes authorizing the creation of municipal fire departments do not refer to such departments as "volunteer" departments (see A.C.A. 14-53-101), some municipalities routinely characterize their departments as such.
Accord Ark. Ops. Att'y Gen. Nos. 2004-070, 2004-069, 2001-351, 99-346, 98-148 and 97-208 (all acknowledging these various types of organizations).
In a very real sense, regardless of how it is organized, any variety of fire department provides a clear "public" service.[1] Indeed, this fact is reflected in the following statement of legislative intent set forth at A.C.A. § 20-22-801 (Repl. 2000), which prefaces a subchapter devoted to the provision of fire protection services:
 It is further found and determined that the public policy of this state should be to encourage individuals and organizations to provide fire protection services and that, to further this policy, workers' compensation coverage should be extended to volunteer fire fighters of rural fire departments and that the civil liability of certified fire departments and their fire fighters should be limited.
See also A.C.A. § 20-22-810(a)(2) (Supp. 2003) (declaring that "[t]he activities of firefighters are important to the health, safety and welfare of the people of this state"). In acknowledgment of this "public" function, A.C.A. § 20-22-809(a) (Repl. 2002) provides that "volunteer fire fighters of certified fire departments, other than municipal fire departments, who meet the requirements of this section shall be deemed county employees and shall receive minimum [workers'] compensation." This statute further affords standard death benefits to a firefighter's survivors, thus providing clearly "public" benefits even to the members of a certified private, nonprofit voluntary fire department. See also
A.C.A. §§ 14-26-101 (Repl. 1998) (extending workers' compensation coverage to county volunteer firefighters) and A.C.A. § 14-60-101 (Repl. 1998) (extending the same coverage to city volunteer firefighters). Section16-55-101 (Repl. 1999) further affords qualified tort immunity to any volunteer firefighter serving a privately organized fire department. Section 20-22-808 (Repl. 2000) likewise affords qualified tort immunity to any certified fire department.
"Public" revenues are further made available to certified private, nonprofit voluntary fire departments in the form of premium taxes collected from insurers and placed in the Fire Protection Premium Tax Fund. See A.C.A. §§ 14-284-403 (Repl 1998) and 26-57-614 (Repl. 1997). One of my predecessors has opined that these funds are clearly "public" in nature. Ark. Op. Att'y Gen. No. 2000-068. Section 14-284-408 (Repl. 1998) further authorizes any county or city to contribute funds "directly to any volunteer fire department or district serving such county or municipality." The direct involvement of government in volunteer fire department affairs is further reflected in A.C.A. §14-20-108(a)(1)(b)(i)(c) (Supp. 2003), which provides that the county will collect dues assessments "in the same manner as real property taxes," and A.C.A. § 14-20-108(b)(1), which provides that the quorum court by ordinance might define the boundaries to be served by a volunteer fire department.
However characterized, funds held by a volunteer fire department must be spent in pursuit of whatever purposes the legislature has chosen to assign any particular type of organization. For instance, A.C.A. §14-14-708(c)(1) (Repl. 1998) defines as the purpose of a volunteer fire department organized as a subordinate service district as being to provide "fire prevention and protection services." Similarly, A.C.A. §14-284-102 (Repl. 1998), in addition to authorizing various emergency services, defines the purpose of a fire protection district as being "the building, equipping, and operating of a fire station or stations equipped with a fire truck or fire trucks, fire hose, chemical fire extinguishers, and other equipment for extinguishing fires." With respect to fire protection district lying outside of cities and towns, A.C.A. §14-284-201(b) (Repl. 1998) provides that such districts exist "for the primary purpose of providing fire protection in rural areas for buildings, structures, and other man-made improvements."[2] Subsection14-92-205(a) (Repl. 1998) further authorizes the formation of suburban improvement districts for the purpose of "establishing, equipping, and maintaining rural fire departments."
In my opinion, such narrow statements of purpose reflect a clear legislative intent that volunteer fire departments organized under the statutory schemes referenced in the preceding paragraph channel their resources only to the ends of preventing and fighting fires.[3] I can find nothing in the Code that might be read as further authorizing a voluntary fire department organized under one of the referenced statutory schemes to use its resources to make political contributions. Moreover, although there is no express recital of legislative purpose in A.C.A. §14-20-108(c), which authorizes a quorum court to "establish its own countywide fire department, either regular or voluntary," I believe it is logical and appropriate to infer that the purpose of such a department would be that recited in A.C.A. § 14-20-108(a)(1)(A) — namely, "providing fire protection to unincorporated areas in the county." Moreover, although there is no express reference to volunteer fire fighters in A.C.A. § 14-53-101, which provides for a city council's establishment of a municipal fire department, the fact remains that municipal volunteer fire departments exist based upon this statute, thus rendering such a department subject to the restriction that it do only those things "necessary to extinguish fires and preserve the property of the city and of the inhabitants from conflagration." Again, nothing in these statutes would support a volunteer fire department in making political contributions.
My analysis is necessarily somewhat less tidy in considering what activities a private, nonprofit fire department might undertake. As noted above, notwithstanding a voluntary fire department's organization as a private, nonprofit corporation, the legislature has provided that such a department may receive public funds from various sources — provisions that appear to reflect the legislature's conclusion that any volunteer fire department, regardless of how organized, realizes a distinctively "public purpose." In a relatively recent opinion, I echoed one of my predecessors' summation of what has come to be known as the "public purpose" doctrine:
 [Th]e broad, but often difficult to define "public purpose" doctrine . . . generally requires that the expenditure of public funds be for a "public purpose." See generally Chandler v. Board of Trustees of the Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 497 (1963), and cf. specifically South Carolina Op. Att'y. Gen. issued April 24, 1987. It has been stated as regards this doctrine that "[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public." McQuillin, Municipal Corporations, § 12, 190. The determination of whether a particular expenditure is for a "public purpose" is to be made by the legislature. Although ultimately the propriety of a particular expenditure is resolved by the judiciary, great weight must be given legislative declarations of public purposes. Turner v. Woodruff, 286 Ark. 66, 698 S.W.2d 527 (1985).
Assuming the public purpose doctrine were deemed to apply when public funds are provided to a private, nonprofit volunteer fire department, I believe a public entity granting the department such funds would be constrained in its expenditure of funds in a manner that tracks that discussed above — namely, it would be obligated to ensure that the funds be used for a public purpose of the sort discussed above.
The remaining question is whether a volunteer fire department, regardless of how organized, might be described as serving a public purpose by contributing to a particular political candidate. As discussed in the attached Ark. Op. Att'y Gen. No. 2004-145, there are instances, termed "government speech," in which public officers might expend public resources advancing a particular position related to their official duties. In my earlier opinion, I offered the following analysis:
 On the one hand, the government is in the business of advancing what it perceives as public policy priorities, and its wisdom in doing so is always subject to political accountability. On the other, it is obliged to avoid expending public funds in connection with an election in a manner that a court might characterize as being overtly partisan, as opposed to "informational.". . .
 However, . . . the inquiry into whether the government has impermissibly entered into the realm of partisan campaigning will always be intensely factual. It is difficult to say more than that the courts have traditionally looked askance on government speech relating to electoral issues.
As might be inferred from my previous analysis, whatever subtleties may arise in defining permissible "government speech," I do not believe either a public or a private, nonprofit fire department, regardless of whether the latter might be characterized as "quasi-public" in character, could permissibly "speak" as a government actor by contributing public funds to one particular candidate. As one of my predecessors noted in Ark. Op. Att'y Gen. No. 98-204:
 It has been noted that there is almost a "uniform judicial reluctance" to sanction the expenditure of public funds to support partisan election positions. See Stanson v. Mott, 17 Cal.3d 206, 130 Cal.Rptr. 697, 551 P.2d 1, 9 (1976). It has been noted, however, that "[t]he courts struggle, often unsuccessfully, to identify the legal premises" for this reluctance. Burt v. Blumenauer, 299 Or. 55, 699 P.2d 168 (1985). It has been stated that:" A fundamental precept of this nation's democratic electoral process is that the government may not `take sides' in election contests or bestow an unfair advantage on one of several competing factions." Id. at 8. The issue is whether the action of the government is truly partisan, and whether public funds are being expended in connection therewith.
As my predecessor further noted:
 Problems may arise, of course, in attempting to distinguish improper `campaign' expenditures from proper `informational' activities. With respect to some activities, the distinction is rather clear; thus, the use of public funds to purchase such items as bumper stickers, posters, advertising `floats,' or television and radio `spots' unquestionably constitute improper campaign activity [citations omitted], as does the dissemination, at public expense, of campaign literature prepared by private proponents or opponents of a ballot measure. [Citations omitted.] On the other hand, it is generally accepted that a public agency pursues a proper `informational' role when it simply gives a `fair presentation of the facts' in response to a citizen's request for information [citations omitted] or, when requested by a public or private organization, it authorizes as [sic] agency employee to present the department's view of a ballot proposal at a meeting of such organization. . . . Frequently, however, the line between unauthorized campaign expenditures and authorized informational activities in not so clear. . . . In such cases, the determination of the propriety or impropriety of the expenditure depends upon a careful consideration of such factors as the style, tenor and timing of the publication; no hard and fast rule governs every case.
(Brackets in original.) In my opinion, the activity you describe — viz., a straightforward contribution of public funds to a political campaign — is simply impermissible and does not trigger any subtle analysis of the sort described by my predecessor.
In terms of constitutional law, I believe a county or municipal fire department's contribution of public funds to a private political candidate would further run afoul of Ark. Const. art. 12, § 5, which provides in pertinent part:
 No county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual.
In Fair Political Practices Commission v. Suitt, 90 Cal.App.3d 125,131-32, 153 Cal.Rptr. 311 (1979), the California Supreme Court held that a materially indistinguishable provision of the California Constitution foreclosed the granting of campaign contributions by governmental entities. I believe similar reasoning would apply in this case.
Finally, I should note that the scope of permissible activities by a private, nonprofit corporation should be recited in its charter documents, which must be reviewed on a case-by-case basis by someone situated to assess the facts. To the extent that a private, nonprofit volunteer fire department indeed warrants being treated as a truly "private" entity, it may be that it could use at least privately raised revenues to advance some partisan position. However, I believe its use of public revenues for any such purpose would subject the entity that provided the revenues to a suit alleging an illegal exaction.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] For purposes of determining what entities will be subject to the Fire Protection Services Act, A.C.A. § 20-22-802(4) (Supp. 2003) broadly defines the term "fire department" as meaning "any organization established for the prevention or extinguishment of fires, including, but not limited to, fire departments organized under municipal or county ordinances, improvement districts, membership fee-based private fire departments, and volunteer fire departments[.]"
[2] Section 14-284-207 provides that the quorum court will define the service area of any fire station located in the district.
[3] With respect to the political activities of fire department members, A.C.A. § 14-51-303 (Repl. 1998) provides that in a city of the first class, the civil service commission will promulgate rules governing political activities.